STATE EX REL. GIBSON, Defendant-Respondent, v. DE-
PARTMENT OF HEALTH & SOCIAL SERVICES, Plaintiff-
Appellant.

Court of Appeals

*No. 77–682. Argued September 28, 1978.—Decided October 31, 1978.*
(Also reported in 272 N.W.2d 395.)

For the appellant the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent the cause was argued by *Mel S. Johnson,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

Before Moser, P.J., Brown and Bode, JJ.

BODE, J. The respondent, Sanford Gibson, has a history of involvement with the criminal justice system. In 1969, he was convicted of armed robbery and robbery. He was sentenced to ten years in prison on the armed robbery charge and received five years probation, to commence upon parole, on the robbery charge. He was paroled in 1972 but was revoked in 1974 as an absconder. On January 28, 1975, he was convicted of armed robbery and received an additional ten-year prison sentence, which was stayed with a five-year term of probation imposed consecutive to the prison term. Gibson was paroled again in December, 1975.

On March 21, 1976, Gibson was arrested and subsequently charged with three counts of armed robbery and two counts of false imprisonment. The department immediately sought to revoke his parole and probation. At that time the alleged violation was that Gibson was found in possession of stolen property. Proper notice and an outline of revocation procedures were served on Gibson, and a final hearing was held on August 18, 1976. After the department had presented its case, the hearing examiner refused to allow Gibson to testify stating the defense to be presented by his counsel was frivolous. An offer of proof was made and the hearing concluded. Following the recommendation of the hearing examiner, the department later revoked Gibson's parole and probation.

Gibson challenged the revocation by writ of certiorari on the grounds that he had been denied due process.

Judge William G. Callow heard the certiorari and reversed the revocation, finding Gibson's due process rights had been violated when the hearing examiner refused to allow him to testify or present his case against revocation. On January 15, 1977, the case was remanded for an "extended final revocation hearing" under the following guidelines:

a. The Department shall not be given an opportunity to add any evidence to its case for revocation but must rest on the evidence it presented at the original revocation hearing on August 18, 1976, except for rebuttal of any evidence offered by defendant;

b. The extended hearing shall begin with presentation of defense testimony and arguments in opposition to revocation;

c. The hearing examiner's amendment of the allegation, striking rule one and substituting rule two, shall be withdrawn and the revocation decision shall be based on whether petitioner's conduct violated rule one.

Following a motion for a change of hearing examiners, a new hearing examiner was appointed to conduct the extended revocation hearing. This hearing was held on March 11, 1977, at which time the alleged violation was that Gibson had been convicted of two counts of armed robbery and two counts of false imprisonment. A certified copy of a judgment of conviction was introduced to support these allegations. Gibson moved to dismiss, arguing the introduction of new allegations with new evidence violated the remand order of the county court. He also moved to exclude the judgment of conviction on the grounds it was not proper under the remand order and varied from the allegations, thereby making it irrelevant. The hearing examiner reserved rulings on both issues.

On March 17, 1977, the hearing examiner called Assistant Attorney General James H. Petersen to get his opinion as to whether the second hearing violated the

remand order. Petersen sent a memorandum to both the hearing examiner and defense counsel in which he stated his belief that the second hearing was a "new revocation proceeding" begun on new grounds, and therefore did not violate the remand order. The hearing examiner adopted this position and on March 22, 1977 recommended that Gibson's parole and probation be revoked. Based on this recommendation, Gibson was revoked on the new allegations.

A second writ of certiorari was then filed. The certiorari was again heard by Judge Callow, who again reversed in a judgment entered December 22, 1977. This appeal is from the judgment reversing Gibson's revocation for the second time.

The department contends the court erred in two respects with regard to its decision on the second certiorari. It argues the court erred:

1) in finding the second hearing was a continuation of the first; and

2) in determining the new allegations and evidence at the second hearing violated a valid remand order.

It is the department's position that the hearing examiner found the first proceedings were abandoned and new charges preferred. Such a finding, it submits, was conclusive on the certiorari court and could not be disregarded because examiner findings are not subject to *de novo* review. While it is true that certiorari is not a *de novo* review, and the court is not permitted to weigh the evidence considered by the examiner, the court may, nevertheless, independently determine whether there is substantial evidence to support the administrative determination. *Van Ermen v. Department of Health & Social Services*, 84 Wis.2d 57, 64, 267 N.W.2d 17, 20 (1978). However, before asking if the examiner's finding was supported by substantial evidence, the court must first determine what the findings were.

In this situation it is not at all clear that the examiner found the prior proceedings had been abandoned. Indeed, the specific language of the finding in question was as follows: "[N]either the order nor due process precludes abandonment of the prior *allegations* by the Bureau of Probation and Parole followed by the assertion and administrative notice of new convictions as grounds for revocation." (Emphasis added.) Since the examiner's statement is ambiguous as to whether he found the second hearing to be a continuation of the first, or an entirely new proceeding, the court had to decide how to interpret the finding.

We believe the certiorari court correctly interpreted the examiner's statement to mean the second hearing had been a continuation of the first. This interpretation we find implicit in the court's initial finding that "the extended final revocation hearing" violated the remand order of January 15, 1977. To have interpreted the statement to mean the second hearing was a new proceeding, as the department urges, would have required the court to accept an interpretation unsupported by the record or the evidence.

The evidence is overwhelming that the second hearing was merely an extension of the first. The hearing examiner opened the proceeding by observing that "[t]he hearing today is being held pursuant to the amended order of Judge Callow remanding this matter for [an] extended revocation hearing." Mr. Piotrowski, who represented the Bureau of Probation and Parole, made no objection to this characterization of the status of the hearing. In addition, the transcript of the hearing indicates the new allegations were consistently referred to as being "substituted" for the original ones, with the recommendation being "amended" to reflect the new allegations. It is also important to note that while Gibson's attorney received a letter notifying him that the allega-

tions were being amended, Gibson himself never received the notice required whenever a revocation proceeding is begun. *Morrissey v. Brewer,* 408 U.S. 471 (1972); BUREAU OF COMMUNITY CORRECTIONS, DIVISION OF CORRECTIONS, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, OPERATIONS MANUAL, sec. 3.02(5)(b)(1) (as amended December 1, 1976).

Indeed, the only evidence in the record to support the contention that this was a new proceeding is the memo by Assistant Attorney General James Petersen. That memo, written as a result of an *ex parte* communication from the hearing examiner, states the bureau position that an entirely new revocation proceeding had been commenced. However, the date of the memo is March 17, 1977, two days *after* the hearing was held, and does not reflect what appears to have been the understanding of the parties at that time. During the course of the hearing, the examiner called a recess while the parties telephoned Mr. Petersen. When the hearing resumed, Mr. Piotrowski made no attempt to clarify the status of the hearing by stating the position taken by Mr. Petersen in his memo. We can only conclude that at the time of the hearing all those concerned believed the proceeding to be a continuation of the first, as stated by the examiner. We do not believe a subsequently written memo should change this view. Based on the foregoing examination of the evidence, we are convinced the court correctly interpreted the examiner's statement to mean the second hearing was not a new proceeding.

The department next argues that the court erred in concluding the second hearing violated a valid remand order. This argument is based on its view that the certiorari court had no jurisdiction to issue the remand order. It maintains that the Wisconsin Supreme Court has consistently held that certiorari jurisdiction is limited

to affirming or reversing. The department claims that in *Snajder v. State,* 74 Wis.2d 303, 246 N.W.2d 665 (1976), the court held that a certiorari court exceeds its jurisdiction if it orders a remand for the taking of further evidence. Since this is precisely what the court did here, the department contends the remand order was invalid.

The department's reading of *Snajder,* as well as its interpretation of the supreme court's position on certiorari jurisdiction, are erroneous. In *Snajder,* the Wisconsin Supreme Court stated that a court sitting in certiorari was traditionally bound to either affirm or reverse. However, the court went on to say that "[i]n *State ex rel. Momon v. Milwaukee County Civil Service Comm.,* 61 Wis.2d 313, 212 N.W.2d 158 (1973), this court expanded the options of the certiorari review." *Snajder,* 74 Wis.2d at 311, 246 N.W.2d at 668. After a discussion of *Momon,* where the proposition was first stated, the court reiterated that a certiorari court may remand, as well as affirm or reverse, on review.

In *Snajder* the certiorari was, as here, to review a revocation of parole. While it is true that in that case the supreme court reversed a circuit court order remanding for the taking of further evidence, we do not believe the case should be read as a blanket prohibition against remanding for the taking of further evidence in all situations.

The factual context of *Snajder* is significantly different from that before us now. Snajder's parole had been revoked based on three violations. The circuit court concluded the evidence was sufficient to support the finding of one violation but further concluded, as to the other two violations, that the evidence was totally insufficient to allow adequate review of the department's decision. As a result, the circuit court remanded the matter to the department with directions to take additional evidence on the two questioned violations.

On review, the supreme court stated this was error because the department was, in effect, given a "second kick at the cat" to show the other two violations were supported by sufficient evidence to justify the revocation order. A remand which allows the department a second shot at establishing grounds for revocation violates the standards of due process and fair play applicable to parole revocation procedures. *State v. Goulette,* 65 Wis.2d 207, 216, 222 N.W.2d 622, 627 (1974). The court reasoned that just as due process and fairness requires a hearing before revocation, *State ex rel. Johnson v. Cady,* 50 Wis.2d 540, 547, 185 N.W.2d 306, 310 (1971), the same concept ought to require that the grounds for revocation be established at a single proceeding. It concluded "[b]ecause a second hearing offends due process the circuit court exceeded its jurisdiction in ordering the record supplemented by additional evidence." *Snajder,* 74 Wis.2d at 314, 246 N.W.2d at 670.

The situation here varies considerably from that found in *Snajder.* Here the remand did not permit the department to introduce further evidence to support its action. Rather, it was ordered for the purpose of, and specifically restricted to, allowing Gibson to testify and present his case against revocation. Consequently, the remand in the present case did not violate due process, (the concern in *Snajder*), but was necessary to correct a violation of Gibson's due process rights. In effect then, the county court incorporated and applied the *Snajder* rationale within its remand order. As a result, the reversal required in *Snajder* is unnecessary here. We conclude that a remand directing the taking of additional evidence is within the jurisdiction of a court in certiorari review when neither the taking of the additional evidence, nor the second hearing itself, violate due process.

Having concluded that the remand by the county court was valid, the next question is whether that order was

violated. We believe it was. As previously quoted, the remand order included three directions:

1) that the department not add any evidence to its case for revocation,

2) that the hearing begin with the defense case against revocation, and

3) that the revocation decision be based solely on whether Gibson's conduct violated rule one. These directions were flagrantly flouted by the department. At the beginning of the second hearing, the bureau representative acknowledged that the bureau was abandoning the original allegations and was seeking revocation on different grounds. Certified copies of judgments of conviction were later introduced as evidence to support the new allegations. These actions were in direct contradiction to the directions contained in the remand and indicate a flagrant disregard of the order. There is no question but that the actions of the bureau violated the county court's remand order.

To avoid being misunderstood, we would add that nothing in this decision is intended to foreclose either the abandonment of proceedings based on specific violations, or the commencing of new proceedings on different grounds. However, if the department chooses this route, it is still required to comply with due process under *Morrisey v. Brewer, supra,* and *State v. Goulette, supra.* Essentially this means that once there has been an abandonment, any proceeding started subsequent to it must be treated as entirely separate and all the provisions in the bureau's BUREAU OF COMMUNITY CORRECTIONS, OPERATIONS MANUAL, *supra,* relating to the commencement of revocation proceedings must be followed.

Before concluding our review of this case, we feel compelled to comment on the *ex parte* communication

initiated by the hearing examiner for the second proceeding. While a hearing examiner is not a judge, he or she performs many of the functions of a judge. Since judges are to be neutral and detached decision makers, we believe hearing examiners should meet the same standard.

In attempting to maintain the appearance, as well as the actuality of neutrality, there has long existed a distaste for *ex parte* communications while a case or hearing is pending. This concept has been codified in standard ten of Wisconsin's *Code of Judicial Ethics*, 36 Wis.2d 252, 258, 153 N.W.2d 873, 876 (1967), which reads:

"10. A judge should always bear in mind the need of scrupulous adherence to the rules of fair play. He should not permit private interviews, arguments, briefs or communications designed to influence his decision. He should not act upon *ex parte* applications unless the necessity for prompt action is clearly shown, granting relief only when fully satisfied that the law permits it and the emergency requires it."

In the instant case we have the rather unusual situation of an *ex parte* communication not from an attorney to the hearing examiner, but from the hearing examiner to the attorney. This is equally improper under standard ten of the *Code of Judicial Ethics, supra*. Thus, while Gibson may not have been prejudiced by the *ex parte* communication initiated by the hearing examiner, this court considers such conduct by one acting in a quasi-judicial capacity to be improper. This type of communication should be strictly avoided.

*By the Court.*—Judgment affirmed.