STATE EX REL. Curtis Lee THOMPSON,
Petitioner-Appellant,

v.

Chase RIVELAND, Chief of the Bureau of Community
Corrections, his agents, employees, or those acting
by his direction or on his behalf, Respondent-Petitioner.†

Supreme Court

*No. 81–1642. Argued October 6, 1982.—
Decided December 2, 1982.*

(Also reported in 326 N.W.2d 768.)

For the respondents-petitioners there was a brief by
*Bronson C. La Follette,* attorney general, and *Susan
Greenberger,* assistant attorney general, and oral argument by *Jeffery Gabrysiak,* assistant attorney general.

For the petitioner-appellant there was a brief and
oral argument by *Mary E. Waitrovich,* assistant state
public defender.

† Motion for reconsideration denied, without costs, on December
27, 1982. ABRAHAMSON, J., concurs. Opinion filed.

STEINMETZ, J. The issue is whether the decision to revoke the probation of Curtis Lee Thompson (Thompson) should be overturned because there was insufficient evidence in the record to warrant revocation or because he was denied rights to confrontation, since the revocation was based entirely on hearsay evidence. A secondary issue is whether the court of appeals was required to remand the case to the Department of Health and Social Services (department) for further revocation proceedings rather than reverse the circuit court's order dismissing Thompson's petition for certiorari.

On October 9, 1978, Thompson was convicted of the crime of burglary. He was placed on probation for a period of three years, with six months in the county jail as a condition of probation.

On July 13, 1980, Thompson was involved in an incident at his home which resulted in the death of his brother, Andrew Thompson. He was originally charged with manslaughter; that charge was subsequently amended to homicide by reckless conduct. The state ultimately moved to dismiss all charges on January 7, 1981, and no criminal conviction was ever obtained against Thompson in connection with his brother's death. The record does not indicate the reasons why all charges were dismissed.

The death of Thompson's brother prompted the department to seek revocation of Thompson's probation. The final probation hearing was held before a hearing examiner on October 29, 1980, at which time Thompson's probation was revoked. The revocation was based almost entirely on the testimony of Debra Trakel, a department agent. Trakel testified about the circumstances of Andrew Thompson's death from the violation report prepared for the revocation proceedings by agent John Hovel, Thompson's supervising agent.[1] She admitted

---

[1] Agent Hovel left the department to attend an unidentified law school before the hearing and was not present to testify.

that she had no personal knowledge whatsoever of the events. In addition, the report contained a verbatim copy of a statement allegedly made to Hovel by Thompson concerning the stabbing incident. Also admitted at the hearing were a case history review, the death certificate and the coroner's protocol of the cause of death of Andrew Thompson, the brother.

The hearing examiner determined that Thompson had violated Rule 1 of his rules of probation which required that he "avoid all conduct which is in violation of criminal law or ordinances" and Rule 5 which required that he "not purchase, possess, own or carry any firearm or any other weapon without advance approval of your agent." Specifically, the examiner found that while Thompson and his brother were quarreling, Thompson picked up a butcher knife and swung it at his brother, causing a stab wound of the aorta, pulmonary artery and lungs, and the death of his brother. The hearing examiner also found that Thompson had failed to adequately cooperate with his agent and participate in community-based treatment programs. This failure, reasoned the examiner, demonstrated that alternatives to revocation were not feasible. He concluded that Thompson had violated the conditions of his probation and that failure to revoke his probation would unduly depreciate the seriousness of his conduct.

The executive assistant to the secretary of the department affirmed the revocation. Thompson petitioned the circuit court for Milwaukee county for certiorari to review the department's revocation order. Thompson's petition was dismissed and sentence imposed on March 30, 1981. A formal order dismissing the petition for writ of certiorari and affirming the department's revocation order was entered on July 30, 1981, by the Honorable Victor A. Manian.

Thompson appealed to the court of appeals. The primary issue addressed by the court of appeals was wheth-

er Thompson's confrontation rights under the Sixth and Fourteenth Amendments were violated when his probation was revoked on the basis of hearsay evidence. That court, in an unpublished decision, held that Thompson's confrontation rights were violated and relied upon its decision in *State ex rel. Henschel v. H&SS Department*, 91 Wis. 2d 268, 271, 282 N.W.2d 618 (Ct. App. 1979). In *Henschel*, the court of appeals held that a probation violation may not be proved entirely by "unsubstantiated hearsay." In *Henschel*, the kind of hearsay evidence that the court of appeals disapproved of is not described. Under most circumstances, the concern of a hearing examiner is not whether the hearsay evidence is substantiated, but whether it is reliable. For this reason, we think it is apparent that the court of appeals meant "unreliable hearsay" and not "unsubstantiated hearsay" in *Henschel*. We read *Henschel* to hold that a probation violation may not be proved entirely by "unreliable hearsay."

We need not address the issue of whether Thompson's right to confrontation was violated, since we find that he was denied due process guaranteed by the Fourteenth Amendment of the United States Constitution and Art. I, sec. 8 of the Wisconsin Constitution[2] by the lack of

---

[2] Amend. XIV, sec. 1 of the United States Constitution provides:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Art. I, sec. 8 of the Wisconsin Constitution reads in part:

"*Prosecutions; second jeopardy; self-incrimination; bail; habeas corpus.* SECTION 8. No person shall be held to answer for a criminal offense without due process of law . . . ."

notice of the total extent and nature of the alleged violations of probation.[3] In addition, we find that on the record before the hearing examiner, there was insufficient evidence to warrant revocation.[4]

Until the final hearing, Thompson only received notice that he violated Rules No. 1 and No. 5 of probation, *i.e.*, he committed a crime and possessed a weapon without agent approval. However, at the final hearing, there was a substantial amount of hearsay evidence presented to demonstrate that Thompson did not satisfactorily cooperate with his supervisors while on probation. The hearing examiner based the decision to revoke, at least in part, on Thompson's lack of cooperation while under supervision. But until the final hearing, Thompson never received notice that the department was also seeking to revoke his probation because he failed to cooperate with his supervisors.

In *Morrissey v. Brewer,* 408 U.S. 471 (1972), the United States Supreme Court set out the minimum requirements of due process in the parole revocation setting. *Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973), held that those same requirements also apply to probation revocation. One of the requisites of due process is that the parolee or probationer receive proper notice of alleged violations. In *Morrissey,* 408 U.S. at 486-87, the court stated:

---

[3] The court of appeals held that the issue concerning adequacy of notice was waived. This court will consider a constitutional issue for the first time on appeal where it is in the interest of justice. *Ramaker v. State,* 73 Wis. 2d 563, 570, 243 N.W.2d 534 (1976).

[4] The court of appeals held that the issue concerning sufficiency of the evidence was waived. In Thompson's petition for writ of certiorari to the circuit court, the issue of sufficiency of the evidence was properly raised, preserving it for this appeal.

"With respect to the preliminary hearing before this officer, the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. *The notice should state what parole violations have been alleged.*" (Emphasis added.)

The *Morrissey* court also stated at 408 U.S. 488–89:

"Our task is limited to deciding the minimum requirements of due process. They include (a) *written notice of the claimed violations of parole;* (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (Emphasis added.)

Considering the sufficiency of the evidence issue, this court has held that at a revocation hearing, the department has the burden to prove the allegation of the violation by a preponderance of the evidence. *State ex rel. Flowers v. H&SS Dept.,* 81 Wis. 2d 376, 388, 260 N.W.2d 727 (1978).[5] Our inquiry on review is limited to whether

---

[5] Sec. HSS 31.03(3)(e)6, Wis. Adm. Code, which deals with the probation-parole revocation procedure states:

"The department has the burden of proof to establish, by a preponderance of the evidence, that the client violated the rules or conditions of supervision."

there is substantial evidence to support the department's decision. *Van Ermen v. H&SS Department,* 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978). From a review of the evidence before the hearing examiner, we conclude that there was insufficient evidence to support the department's revocation decision. The hearing examiner did offer Thompson's attorney an adjournment for Thompson to bring in either additional witnesses to the incident or agent Hovel. That offer has no bearing on the sufficiency issue. It is incumbent upon the department, not the probationer, to ensure that the examiner has sufficient evidence before him to determine whether revocation is warranted.

The decisive question before the examiner was whether Thompson properly exerted self-defense. The examiner had to determine whether Thompson had committed *any* crime ranging from first degree murder to homicide by reckless conduct, which was finally charged but ultimately dismissed on the district attorney's motion, or whether the facts of the event themselves could provide a basis to warrant revocation. The violation report, the case history review and Thompson's alleged statement to Hovel contain no evidence to show that Thompson used excessive force when defending himself and cannot support a finding that a crime had been committed. A claim of self-defense is available to all persons in society whether on probation or not.

The death certificate and medical examiner's protocol are of no significance except to show that Andrew Thompson died of a stab wound on the day of the conflict between the brothers.

In sum, on this record, the examiner could not have determined whether Thompson committed a crime, since

This is consistent with ABA Standards Relating to Probation at sec. 5.4 which state that: "establishment of the violation by the government by a preponderance of the evidence" is necessary to sustain a revocation.

there was no evidence introduced to dispute Thompson's claim of self-defense.

The Rule No. 5 violation, regarding possession of a weapon, also cannot be sustained. Under the circumstances of the event known to the examiner, Thompson claimed to grab the nearest weapon available to defend himself against his brother's alleged attack. To claim that he therefore possessed a weapon without advance approval of his agent is sophistry, unworthy of further comment.

The last issue to consider is whether the case should be remanded or reversed. In *Snajder v. State,* 74 Wis. 2d 303, 246 N.W.2d 665 (1976), we held it improper to remand for the purpose of supplementing the evidence in support of revocation. However, in *State ex rel. Gibson v. H&SS Department,* 86 Wis. 2d 345, 272 N.W.2d 395 (Ct. App. 1978), the court of appeal held it to be proper to remand for the purpose of allowing the probationer to present the case against revocation. We agree with the court of appeals that it is more appropriate to treat this case as a reversal. This record does not contain a preponderance of the evidence indicating that revocation of probation was appropriate, and it would therefore be incorrect to return the matter to the department for additional evidence to be presented by the probationer. If the department believes probation revocation is in order, it may seek a new petition for revocation and elicit additional evidence.[6]

*By the Court.*—The decision of the court of appeals is affirmed.

The following memorandum was filed December 27, 1982.

---

[6] The department remains free to offer any probation record that was prepared pursuant to a probation official's regularly conducted duties or police investigative material if demonstrated to be reliable. It may also wish to offer testimony from agent Hovel or from witnesses present at the stabbing incident,

SHIRLEY S. ABRAHAMSON, J. (*concurring on motion for reconsideration*). I would deny the motion, but I would amend the opinion by deleting the following language:

"If the department believes probation revocation is in order, it may seek a new petition for revocation and elicit additional evidence.[6]

[6] The department remains free to offer any probation record that was prepared pursuant to a probation official's regularly conducted duties or police investigative material if demonstrated to be reliable. It may also wish to offer testimony from agent Hovel or from witnesses present at the stabbing incident.