STATE of Wisconsin EX REL. Raymond BOOKER,
Petitioner-Appellant,

v.

David SCHWARZ, Respondent-Respondent.

Court of Appeals

*No. 03–0217. Oral argument December 17, 2003.—Decided
February 10, 2004.*

2004 WI App 50

(Also reported in 678 N.W.2d 361.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John A. Pray, Mary Prosser* and *Byron Lichstein* of the *Frank J. Remington Center, University of Wisconsin Law School*, Madison. There was oral argument by *Byron Lichstein*.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,*

attorney general and *Christopher G. Wren*, assistant attorney general. There was oral argument by *Christopher G. Wren*.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. WEDEMEYER, P.J.   Raymond Booker appeals from a circuit court order denying his petition for *writ of certiorari*, wherein he requested reversal of the refusal of the Division of Hearings and Appeals to reopen his revocation proceedings based on newly discovered evidence. Booker claims the Division acted unreasonably and outside the law in denying his motion, which requested either a new probation revocation hearing or an evidentiary hearing to determine whether newly discovered evidence entitled him to a new revocation hearing. He asks this court to reverse the Division's order and remand for an evidentiary hearing on his motion to address his claim that newly discovered evidence justifies re-opening the revocation proceedings. Because Booker's post-revocation motion contained sufficient facts to entitle him to an evidentiary hearing on his newly discovered evidence claim, we reverse the order and remand this matter to the Division for such evidentiary hearing.

## I. BACKGROUND

¶ 2.   On July 14, 1993, Booker was convicted of burglary and sentenced to a ten-year prison term, which was stayed. Booker was placed on six years' probation. After three years on probation, the Division recommended that Booker's probation be revoked. The revocation recommendation was based on an incident which occurred on August 12, 1996. Booker was walking on a sidewalk near his house when a vehicle being

749

driven by Dennis Adams approached. Adams stopped the vehicle near Booker and Booker recognized a passenger, Myles Marshall. Marshall exited the vehicle and Booker and Marshall walked along the sidewalk talking. They discussed a 1989 incident, wherein Marshall pointed an air gun in Booker's face and pumped it twice. Booker believed the gun was real and Marshall told Booker the only reason Booker was alive was because the gun jammed.

¶ 3. The two men returned to the Adams vehicle. As Marshall reached for the door handle, Booker hit him. The exact nature of the hit was disputed. Booker claimed he pushed him because he thought Marshall was reaching for a shotgun to kill him. Marshall stated that Booker punched him three times, once in the chest, once in the stomach and once to his wrist, breaking it in three places. Marshall denied that he was reaching for a gun; he maintained that he asked Adams to "hand me that thing," referring to a bar that locks the steering wheel.

¶ 4. At the revocation hearing, Booker and Marshall testified as to their own version of events. Booker stated he was acting solely in self-defense. Marshall described Booker as the aggressor. The administrative law judge (ALJ) found Marshall to be credible and found that Booker's claim of self-defense was not credible. On November 12, 1996, Booker's probation was revoked for violating rule #1 of his probation,[1] and he began serving the ten-year burglary sentence. Booker appealed to the Division, which affirmed the ALJ's revocation decision.

---

[1] Rule #1 of Booker's probation states: "You shall avoid all conduct which is in violation of federal or state statute, municipal or county ordinances or which is not in the best interest of the public welfare or your rehabilitation."

¶ 5.    On April 23, 2002, Booker filed a motion with the Division seeking to vacate the revocation or, in the alternative, an evidentiary hearing to determine whether newly discovered evidence entitled him to a new revocation hearing. The newly discovered evidence related to the substantial battery charge, which had been filed against him as a result of the physical encounter with Marshall. Booker had been convicted of substantial battery as a result of Marshall's injuries; however, in postconviction proceedings, the conviction was vacated as a result of newly discovered evidence. The evidence consisted of the medical opinion from orthopedic surgeon Dr. Sean Keane, who stated in a March 5, 1998 letter:

> In summary, Mr. Myles Marshall testified that his fracture at the left wrist was caused by a karate chop administered by Mr. Raymond Booker. He also testified that his fracture at the right fifth knuckle was caused by a blow from Mr. Booker's elbow.
>
> Mr. Marshall's left wrist fracture has been described by the examining radiologist, Dr. C. Locher. He describes a comminuted Colles-type fracture at the left wrist. This fracture, in my opinion, could *not* have been caused by a karate chop. It would most likely have been caused by a fall on the outstretched left hand.
>
> Mr. Marshall's fracture in the right hand, by the description in the evidence, appears to have been a fracture of the neck of the right fifth metacarpal. This, in my opinion, could not possibly be caused by a blow from an assailant's elbow. Almost invariably, such a fracture is caused by the patient hitting an opponent, or a firm object such as a wall, with the clenched fi[s]t. Indeed, this fracture is usually referred to as a "boxer's fracture".
>
> . . . .

It is my opinion, to a reasonable degree of medical certainty, that Mr. Marshall sustained these fractures *after* he had left the scene of the confrontation with Mr. Booker. It is further my opinion that neither of these fractures could have been sustained by his diving through a car window and landing on the front seat of a car, nor would the patient have been able to land on the front seat of a car, bracing himself with a fractured wrist of this type.

Additionally, I have reviewed the initial x-rays of Mr. Marshall's left wrist and confirm that the fracture is as described by Dr. Locher and could not have been caused by a karate chop.

¶ 6. The second piece of newly discovered evidence was Marshall's testimony, at the criminal battery trial in January 1997, that when he asked Adams to "hand me that thing," Marshall was referring to a pistol. During the revocation proceedings in October 1996, Marshall denied referring to a gun, but rather, indicated he was describing a bar for locking the steering wheel.

¶ 7. Thus, based on these two items of newly discovered evidence, Booker requested a new revocation hearing or, alternately, an evidentiary hearing. Booker did not provide any reason for the four-year delay between discovering the new evidence and filing of his motion. The Division denied the motion, citing three reasons:

(1) There is no provision in the Wisconsin Administrative Code or other legal authority for reopening revocation hearings.

(2) The administrator was "not convinced" that the proffered evidence would likely result in a "different outcome" insofar as Booker's self-defense

claim was "fully considered" at the revocation hearing and Booker started the confrontation by punching Marshall in the abdomen.

(3)    The proffered medical evidence is not "newly discovered" since Booker "could have raised this issue years ago."

¶ 8.  Booker appealed the Division's order by way of certiorari review to the circuit court. In his appeal, Booker offered an explanation for the time delay—that his criminal attorney (who defended the battery charge) failed to file the motion challenging the revocation proceedings and that his subsequent attorney was delayed because of constraints related to transferring records from the criminal attorney to the legal assistance program that was handling his case. The circuit court denied Booker's petition in a written decision, ruling that the motion was not timely filed. The circuit court found that Booker was negligent in failing to discover the medical evidence earlier or in failing to bring the motion earlier. Booker now appeals from that order.

## II. DISCUSSION

¶ 9.  Booker asks this court to reverse the Division's May 17, 2002 decision refusing to conduct an evidentiary hearing to consider whether newly discovered evidence entitled him to a new revocation hearing.

■■

¶ 10.  We review the decision of the agency, not that of the circuit court. *State ex rel. Warren v. Schwarz*, 211 Wis. 2d 710, 717, 566 N.W.2d 173 (Ct. App. 1997), *aff'd*, 219 Wis. 2d 615, 579 N.W.2d 698 (1998). Our review is limited to determining whether: (1) the Division stayed within its jurisdiction; (2) it acted

according to law; (3) its action was arbitrary, oppressive or unreasonable and represented its will, not its judgment; and (4) the evidence was such that it might reasonably make the decision that it did. *State ex rel. Tate v. Schwarz*, 2002 WI 127, ¶ 15, 257 Wis. 2d 40, 654 N.W.2d 438.

¶ 11.   The issue of whether a probationer has a right to re-open a revocation hearing based on newly discovered evidence is one of first impression. It is undisputed that there are no administrative code provisions providing for such a right. Booker, however, argues by analogy to criminal proceedings, based on *State v. Bembenek*, 140 Wis. 2d 248, 409 N.W.2d 432 (Ct. App. 1987), that due process requires that such a process be permitted.

¶ 12.   In *Bembenek*, this court held that due process may require granting a new trial on the basis of newly discovered evidence even after the statutory time period for bringing post-verdict motions has passed. *Id.* at 252. Our ruling, however, was based on WIS. STAT. § 974.06, which provides a criminal defendant the statutory vehicle to proceed with such a claim. Booker acknowledges that there is no code provision equivalent to § 974.06 upon which to base his newly discovered evidence claim in the revocation arena. He argues, nonetheless, that the constitutional right to due process survives independent of any other legal authority. Schwarz, as representative of the Division, points out significant differences between a criminal defendant's rights in this regard and a probationer's rights at a revocation hearing, which is a civil matter governed by administrative rules. Further, he argues that even if we assume that the *Bembenek* due-process considerations for granting a new trial based on newly discovered evidence also apply to the decision whether to grant a

new probation-revocation hearing, Booker failed to satisfy the five-prong test set forth in *Bembenek*. The five-prong test provides the requirements a defendant must satisfy in order to be granted a new trial on the basis of newly discovered evidence:

> (1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at trial; and (5) it must be reasonably probable that a different result would be reached on a new trial.

*Bembenek*, 140 Wis. 2d at 252. Schwarz argues that while Booker's evidence satisfies the first and fourth criteria, it fails to satisfy the second, third and fifth. Booker replies that there is sufficient evidence in the record to establish that he can satisfy each of the *Bembenek* factors.

¶ 13. "[T]he law generally prefers that controversies once decided on their merits remain in repose." *State ex rel. Flowers v. DHSS*, 81 Wis. 2d 376, 393, 260 N.W.2d 727 (1978). Nevertheless, our system of justice would have little meaning if it failed to provide a procedure for individuals who have substantial credible evidence to prove their innocence. Due process is the quintessential foundation upon which fairness and justice rest, not only at the time of trial, but at all stages of proceedings. *Bembenek*, together with WIS. STAT. § 974.06, provide that avenue in the criminal area, as long as certain requirements are satisfied. We have not been presented with any legitimate reason as to why a similar procedure to ensure due process of law should not also apply to an individual in Booker's situation, considering the personal liberty interest at stake. In

fact, Schwarz concedes that "[t]he concepts of due process and fair play apply to parole revocation hearings." *State ex rel. Leroy v. DHSS*, 110 Wis. 2d 291, 295, 329 N.W.2d 229 (Ct. App. 1982).

¶ 14.   Therefore, we hold that the determination of whether a claim that newly discovered evidence entitles a probation revokee to an evidentiary hearing to determine whether a new probation revocation hearing should be conducted shall be governed by procedures analogous to those in criminal cases. In so holding, we set forth the following standards and requirements to govern these types of cases.

¶ 15.   If a movant wishes to have an evidentiary hearing on a newly discovered evidence claim, he or she may not rely on conclusory allegations. If the claim is conclusory in nature, or if the record conclusively shows that the movant is not entitled to relief, the Division may deny the motion without an evidentiary hearing. *See State v. Bentley*, 201 Wis. 2d 303, 309–11, 313–18, 548 N.W.2d 50 (1996). To obtain an evidentiary hearing on the newly discovered evidence claim, the movant must allege with specificity the *Bembenek* factors in the post-revocation motion. *See Bentley*, 201 Wis. 2d at 313–18. Whether the motion sufficiently alleges facts which, if true, would entitle the movant to relief is a question of law to be reviewed independently by this court. *See id.* at 310. If the Division refuses to hold a hearing based on its findings that the record as a whole conclusively demonstrates that the movant is not entitled to relief, this court's review is limited to whether the Division erroneously exercised its discretion in making this determination. *Id.* at 318.

¶ 16. Applying this test to the facts at hand, we conclude that Booker's post-revocation motion satisfied the requisite factors. First, Schwarz concedes that the first and fourth factors of the *Bembenek* test were satisfied—that is, the evidence presented is new and it is not cumulative. Accordingly, our analysis focuses on the second, third, and fifth factors.

¶ 17. The second factor requires that the moving party must not have been negligent in seeking to discover the new evidence. Booker contends that he was not negligent in discovering the evidence because "proof of Marshall's lies was not in existence at the time of the revocation hearing." In support of his allegation, Booker sets forth in detail Marshall's testimony at the revocation hearing as opposed to the testimony he offered during the criminal battery trial. Booker also presents the report of Dr. Keane, which directly contradicts Marshall's revocation hearing testimony. There was some dispute as to whether Booker was negligent in discovering this information because Marshall's injury existed at the time of the revocation hearing. It was unclear, however, from the record as to whether Marshall's medical records were available for review. Regardless, this dispute does not defeat Booker's entitlement to an evidentiary hearing. Rather, this is the type of information that will be fleshed out and resolved during the evidentiary hearing.

¶ 18. The third factor requires that the evidence must be material to the issue. Booker contends that the newly discovered evidence is material because his revocation was based entirely on Marshall's credibility. He alleges in his post-revocation motion that "[t]his new evidence demonstrates that Marshall's testimony was

not true, that Booker did not break Marshall's hand, and that Booker did indeed have good reason to believe Marshall was going for a gun." Booker states that the ALJ found "the testimony of Marshall credible and reliable, and found incredible the self-defense claim asserted by Booker." Therefore, he argues that the newly discovered evidence is material. Schwarz contends that the new evidence is not material because Marshall's wrist fracture was not the heart of the revocation case. Instead, Schwarz maintains, the revocation was based on the sole fact that Booker struck Marshall and therefore violated one of his probation conditions. Again, this is a matter that will be resolved during the evidentiary hearing. The respondent will present facts relative to this issue and Booker will present his. *See State ex rel. Thompson v. Riveland*, 109 Wis. 2d 580, 586, 326 N.W.2d 768 (1982) ("A claim of self-defense is available to all persons in society whether on probation or not.").

¶ 19.  The fifth factor requires that it must be reasonably probable that a different result would be reached at a new trial. In support of this factor, Booker alleges that if the ALJ had the newly discovered evidence presented during the revocation hearing, he would not have found Marshall to be credible and would have found Dr. Keane's opinion as substantial corroboration for his (Booker's) claim of self-defense. As a result, Booker argues that with this new evidence, there is a reasonable probability that the ALJ would reach a different conclusion.

¶ 20.  Among other things, Booker attached to his post-revocation motion a variety of exhibits, including Dr. Keane's report, excerpts of Marshall's testimony, documents showing the proceeding in the criminal

battery trial, including the decision vacating the conviction based on the newly discovered evidence, and the ALJ's decision. Booker's motion, together with the attached exhibits, satisfies the *Bentley* standards by setting forth, with specificity, facts which, if true, would entitle him to relief. Therefore, we conclude that the Division erred by refusing to grant him an evidentiary hearing. Accordingly, we reverse the order and remand the matter to the Division with directions to conduct an evidentiary hearing on Booker's claim of newly discovered evidence.[2]

---

[2] This case also presented an issue as to whether Booker's post-revocation motion was timely or untimely and therefore barred by the doctrine of laches. We agree with Booker's interpretation that the *Bembenek* factor addresses solely the amount of time the movant took to *discover* the evidence. *State v. Bembenek*, 140 Wis. 2d 248, 252, 409 N.W.2d 432 (Ct. App. 1987). This time period may be considered in determining whether Booker was negligent in seeking to discover the evidence and consequently will factor into the Division's decision as to whether the *Bembenek* factors are satisfied.

The *Bembenek* case, however, does not address the time it took the movant to seek redress *after* discovering the evidence; i.e., the time between the discovery of the new evidence and the filing of the motion. This time period is relevant to the issue of laches—an equitable doctrine that may bar an action if three requirements are met: (1) Booker unreasonably delayed in filing the motion; (2) Schwarz lacked knowledge that Booker would assert the right; and (3) Schwarz is prejudiced by the delay. *Sawyer v. Midelfort*, 227 Wis. 2d 124, 159, 595 N.W.2d 423 (1999). The party asserting that laches applies must prove all three elements. If any of the elements is not proven, the doctrine of laches will not bar the action.

Here, the pertinent time period involves: the date on which the new evidence was discovered, March 5, 1998; the date of Dr. Keane's opinion letter, also March 5, 1998, and the date the post-revocation motion was filed, April 23, 2002.

*By the Court.*—Order reversed and cause remanded with directions.

Booker offers what may be a reasonable explanation for the delay:

> Booker stated that he sought legal help from the University of Wisconsin's LAIP project on July 3, 1998—several months after he obtained Dr. Keane's letter. LAIP then contacted Booker's attorney who was representing him in postconviction proceedings on his criminal conviction, Cord Klein. Booker claimed that Attorney Klein had told him that he planned on filing a Writ of Habeas Corpus with regard to Booker's revocation, but Klein never did take such action. Booker alleged that he then recontacted LAIP, which experienced great difficulties in getting the relevant records from Attorney Klein. These were finally procured in April, 2001, after which time law students worked on the motion that was finally submitted on April 23, 2002.

Whether the doctrine of laches defeats Booker's motion may also be considered at the evidentiary hearing.