VAN ERMEN, Plaintiff-Respondent, v. DEPARTMENT OF HEALTH & SOCIAL SERVICES, and another, Appellant.†

*No. 77-251. Argued June 7, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 17.)

† Motion for rehearing denied, without costs, on September 21, 1978.

58

For the appellant the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent the cause was argued by *Steven P. Weiss,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

BEILFUSS, C. J. The facts underlying this case are set forth in the findings of the Department's hearing examiner: [1]

"In 1961, Mr. Van Ermen, the parolee, was convicted of First Degree Murder. He was convicted of murdering a 63 year old woman after sexually assaulting her during an episode of heavy drinking. Van Ermen maintained he 'blacked out' and was unable to recall anything in detail concerning the incident.

"He received a commutation of his life sentence in 1972, from the Governor and was paroled to field supervision in April, 1973. As a condition of his parole he was forbidden to drink any alcoholic beverages whatsoever at anytime. In implementing the Parole Board's restriction, the parole agent who received Van Ermen on parole incorporated in his parole agreement a prohibition against drinking as follows: 'absolutely no drinking at anytime or place by order of the Parole Board.'

"Prior to his release to parole, Mr. Van Ermen had been working at the Thill Company of Oshkosh on a work release program. He maintained that employment after his release to the date of his recent arrest and detention on July 10, 1976.

"His parole supervision was uneventful and according to the agent, 'went very well.' He maintained employment, he reported satisfactorily, he cooperated with his agent, and during the course of his parole, he married his present wife. No problems arose during the course of this supervision until July, 1976.

"In April, 1976, the agent learned from C. S. A. Martin that Van Ermen was occasionally drinking. The agent planned to talk to Van Ermen about his admitted consumption of alcohol, on the next meeting in June, 1976. When they met, they discussed Van Ermen's 14 year old stepdaughter and his wish to move closer to his work. The agent forgot to talk to Van Ermen about his drinking.

"On July 10, 1976, Robert Van Ermen violated the terms of his parole by consuming at least six cans of beer

---

[1] Respondent Van Ermen accepts these facts but disagrees with the Department's conclusions.

at a Summerfest celebration in Berlin Wisconsin. Short-
ly thereafter, he was arrested for an alleged sexual
molestation of an 8 or 9 year old girl. He is presently
charged with criminal conduct in Fond du Lac County
and is being detained on $50,000 property bond and a
parole hold.

"The examiner finds that the allegation that Mr. Van
Ermen consumed alcohol in violation of his parole agree-
ment, has been proven. This conduct is a serious violation
of his parole supervision in view of the fact he was
granted a 'no drink' parole by the Parole Board. The
conduct is serious enough to warrant revocation of his
parole.

"The examiner finds that the Bureau of Probation and
Parole has complied with the law in this revocation. Mr.
Van Ermen understood that he was not to drink whatso-
ever. There were indications throughout supervision that
alcohol and its consumption was discussed. There is no
doubt that Van Ermen knew that he was not to drink.
The fact that Mrs. Van Ermen advised C. S. A. Martin
her husband had an occasional drink which information
was relayed to Agent Meenk, should not have given Van
Ermen the impression that he had a license to begin drink-
ing. Meenk's silence on the subject during their June
meeting should not have been considered by Van Ermen
as a modification of the agent's position in monitoring
his behavior. Van Ermen had a responsibility and duty
to discuss his drinking with agent prior to any consump-
tion whatsoever. This is especially so when considering
the part drinking Van Ermen contends played in the
underlying murder. The examiner finds that not to re-
voke parole at this time would unduly depreciate the
seriousness of the offense and further that, Robert Van
Ermen should be removed from the community to protect
the community from his further criminal conduct."

The hearing examiner's recommendation of revocation
was accepted by the Department and Van Ermen's parole
was revoked on September 23, 1976.

On February 7, 1977, Van Ermen petitioned the cir-
cuit court for Sheboygan county, the court of his original
conviction, for a writ of certiorari. The writ was issued

on February 16, 1977. A hearing was held on June 10, 1977, and the court rendered a decision on August 31, 1977. The court noted that the sole reason given by the Department for the revocation was the violation of the "no drinking" clause; in all other respects Van Ermen abided by the terms of his agreement. The court emphasized the testimony of the parole agent, Van Ermen's wife, and Van Ermen's neighbors to the effect that Van Ermen was a model parolee in all other respects.

The trial court stated that the decision to revoke parole is a two-step process, and quoted from *Morrissey v. Brewer*, 408 U.S. 471, 479–80 (1972) :

"The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation ?"

The court stated that it was clear that Van Ermen had violated the "no drinking" clause of the agreement but concluded that the examiner's finding—that failure to revoke would unduly depreciate the seriousness of the violation—was not supported by the facts. Because the agent had been aware of similar prior violations but had not taken any action on them, the court concluded that the seriousness of the offense was depreciated by the Department itself.

As to the second finding—that parole should be revoked because Van Ermen must be removed from the community to protect it from further criminal activity— the trial court again questioned the proof behind the assertion. It concluded, despite the contrary position of the Department, that the Department was basing its finding on the arrest for alleged child molestation. The

only other basis for such a finding was a 1972 neurological examination report which indicated that Van Ermen might be dangerous if intoxicated. The trial court concluded that this was not sufficient to show any need to remove Van Ermen from the community for its protection.

In conclusion, the court held that the Department's order was arbitrary and capricious, "representing the Department's will to revoke because of the pending sexual assault charges and not the Department's judgment on the drinking violation." On September 16, 1977, judgment was entered vacating the revocation and ordering the reinstatement of Van Ermen's parole. The Department filed notice of appeal on the same day.

This court ordered the Department to restore Van Ermen to parole status pending appeal. It should also be noted that on October 21, 1977, the sexual molestation charge against Van Ermen was dismissed upon the motion of the Green Lake County District Attorney.

Review of a parole revocation by certiorari is limited to the following questions:

" '(1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.' " *Snajder v. State,* 74 Wis.2d 303, 310, 246 N.W.2d 665 (1976).[2]

The trial court concluded that numbers (3) and (4) of the rule were not complied with; that the board's action was arbitrary and capricious, representing its will and not its judgment, and that the evidence did not sup-

[2] *See also: State v. Goulette,* 65 Wis.2d 207, 215, 222 N.W.2d 622 (1974); *State ex rel. Ball v. McPhee,* 6 Wis.2d 190, 199, 94 N.W.2d 711 (1959).

port the revocation. We disagree, and conclude that the circuit court exceeded the scope of its certiorari review powers. The judgment must be reversed.

When a court on certiorari considers whether the evidence is such that the Department might reasonably have made the order or determination in question, the court is not called upon to weigh the evidence; certiorari is not a *de novo* review. The inquiry is limited to whether there is substantial evidence to support the Department's decision. *State ex rel. Ball v. McPhee, supra,* 6 Wis.2d at 200. It is the province of the Department to weigh the evidence in a revocation case. A certiorari court may not substitute its view of the evidence for that of the Department.

There was substantial evidence to support the revocation order. Van Ermen violated a special "no drinking" condition of his parole. The violation of this condition takes an added importance when it is remembered that drinking played an important part in Van Ermen's underlying conviction. The Department's decision was bolstered by a neurological examination report which characterized Van Ermen as an episodic drinker who would become "pathologically" intoxicated. The report concluded that Van Ermen could pose a danger to society if he resumed drinking. Additionally, it is apparent that Van Ermen's condition is not an ordinary alcoholic condition which is susceptible to treatment or group consultation or therapy. The circuit court's finding that the Department's decision was arbitrary and capricious, representing its will and not its judgment, in our opinion ignores the substance of the facts:

". . . an agency does not act in an arbitrary or capricious manner if it acts on a rational basis. . . . Arbitrary action is the result of an unconsidered, wilful or irration-

al choice, and not the result of the 'sifting and winnowing' process." *Robertson Transportation Co. v. Public Service Comm.*, 39 Wis.2d 653, 661, 159 N.W.2d 636 (1968).

The requirement that the Department's action represent its judgment and not its will calls for an exercise of discretion. In *McCleary v. State*, 49 Wis.2d 263, 277, 182 N.W.2d 512 (1971), this court noted that discretion is a reasoning process which:

". . . must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards."

In this case the Department considered the facts in light of the American Bar Association's *Standards Relating to Probation,* which this court adopted in *State ex rel. Plotkin v. H&SS Department,* 63 Wis.2d 535, 217 N.W.2d 641 (1974).[3] Although we have not adopted these stan-

---

[3] "5.1 *Grounds for and alternatives to probation revocation.*

"(a) Violation of a condition is both a necessary and a sufficient ground for the revocation of probation. Revocation followed by imprisonment should not be the disposition, however, unless the court finds on the basis of the original offense and the intervening conduct of the offender that:

"(i) confinement is necessary to protect the public from further criminal activity by the offender; or

"(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

"(iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

"(b) It would be appropriate for standards to be formulated as a guide to probation departments and courts in processing the violation of conditions. In any event, the following intermediate steps should be considered in every case as possible alternatives to revocation:

"(i) a review of the conditions, followed by changes where necessary or desirable;

dards as guidelines for parole revocations, we note that the parties treat them as applicable and hold that it was not improper for the Department to rely on them.

The Department concluded that revocation was necessary to protect the public, and that the seriousness of the violation would be unduly depreciated if revocation was not ordered. These findings of ultimate fact are supported by substantial evidence and, accordingly, could not be questioned by the circuit court in its certiorari review. As noted, *supra,* Van Ermen broke a special condition of his parole. Furthermore, there was persuasive evidence which showed that he was a danger to society when intoxicated. This evidence is sufficient to support the Department's findings and revocation order. The Department exercised its discretion on a rational basis. Its action was neither arbitrary nor capricious.

The finding of the circuit court that the revocation was arbitrary and capricious as based on the arrest for sexual molestation is not borne out by the record. The Department presented sufficient other grounds for revocation. In any event, the fact that a parolee has been arrested can properly be considered as a factor to weigh in a revocation proceeding. Additionally, the fact that the Department did not take immediate action when it heard of alleged earlier drinking could not excuse the later violation. The circuit court erred by holding that the Department could not revoke Van Ermen's parole because it failed to act on the alleged violation.

"(ii) a formal or informal conference with the probationer to re-emphasize the necessity of compliance with the conditions;

"(iii) a formal or informal warning that further violations could result in revocation." American Bar Association, *Standards Relating to Probation,* pp. 15, 16, 56, 57.

Van Ermen also challenges his revocation on the grounds that the Department failed to consider alternatives to revocation such as those set forth in the ABA-*Plotkin* standards. Although, as noted *supra,* we have not held that the *Plotkin* standards apply to parole revocations, this court has stated that the "ultimate question" posed in a parole revocation proceeding is whether the parolee remains a "good risk" susceptible to rehabilitation outside the prison or whether incarceration is necessary. *State ex rel. Flowers v. H&SS Department,* 81 Wis.2d 376, 385, 260 N.W.2d 727 (1978). *See also: Morrissey v. Brewer,* 408 U.S. 471, 479 (1972). This does not mean that revocation cannot occur unless alternatives are tried, but it does mean that the Department must exercise its discretion by at least considering whether alternatives are available and feasible. The Department should not be able to circumvent its duty to consider measures short of revocation by merely setting forth the reasons favoring revocation.

Although it is apparent that the Department did not exercise its discretion concerning alternatives to revocation in any formal manner, we may examine the record *ab initio* to see if it supports the Department. *Hyslop v. Maxwell,* 65 Wis.2d 658, 664, 223 N.W.2d 516 (1974) ; *McCleary v. State, supra,* 49 Wis.2d at 277. There is evidence that the parole agent and his supervisor met several times to discuss whether revocation was necessary and that it was only after considerable thought and discussion that the agent decided to recommend revocation. The record shows that the agent considered factors which favored the continuance of parole, including Van Ermen's otherwise excellent parole record, his steady job, and his wife's medical problems. More importantly, it appears that Van Ermen's drinking condition is in-

capable of treatment by usual means. The Department could have concluded that because Van Ermen's drinking could not be treated or controlled, revocation and incarceration were necessary to protect the public from a recurrence of his antisocial conduct.

Although the Department should henceforth be careful to exercise its discretion by considering alternatives, the failure to do so here was not fatal.

The final issue before us concerns whether the circuit court exceeded its power on certiorari review by ordering that Van Ermen's parole be reinstated. Because the trial court erred by vacating the Department's revocation order, we do not have to reach this issue.

*By the Court.*—Judgment reversed and remanded with directions to reinstate the order of the Department.

HEFFERNAN, J., took no part.