STATE EX REL. James ECKMANN, Petitioner-Appellant†

v.

DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent.

Court of Appeals

*No. 82–1378. Submitted on briefs March 24, 1983.—*
*Decided June 7, 1983.*
(Also reported in 337 N.W.2d 840.)

---

† Petition to review denied.

36

For the petitioner-appellant the cause was submitted on the brief of *Thomas K. Voss* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

Before Scott, C.J., Brown and Wedemeyer, JJ.

BROWN, J. In this probation revocation case, the petitioner's more compelling argument is that although the secretary of the Department of Health and Social Services may reverse a hearing examiner when credibility is at issue, such reversal may occur only after consultation with the examiner about witness demeanor or after a written synopsis on demeanor is filed by the examiner. We believe the supreme court has already answered the question in the negative. After considering this and two other issues raised, we affirm.

James Eckmann was convicted of two counts of armed robbery and one count of robbery, party to a crime. Although he was sentenced to prison, that sentence was later modified, and Eckmann was placed on probation for ten years, staying the balance of the sentence. The trial court later added a condition to the terms of probation— that Eckmann was not to consume any alcoholic beverages. Eventually, a urine sample was given at agent request, and alcohol was found present by means of a thin-layer chromatography test. Revocation proceedings followed.

At the final hearing, the department limited its case to submission of the test results. Eckmann testified in his own behalf. He denied drinking alcohol and claimed his work as an apprentice cosmetologist brought his hands into continual contact with isopropyl alcohol, a nondrinkable form. The examiner found that because the test was not specific for ethanol, the type used in intoxi-

cating beverages, testimony by the medical technician was insufficient.

This finding of insufficiency was made in spite of the fact that the medical technician testified a pathologist told him one cannot absorb enough isopropyl alcohol through the skin to get a positive reaction in the urine. The examiner refused to consider this because it was hearsay. The examiner also noted that Eckmann denied drinking alcohol and dismissed the revocation proceedings.

The secretary's designate reversed the hearing examiner. The designee found that the test performed was positive for alcohol and that a *prima facie* case had been made. The designee then held that the petitioner had not produced satisfactory evidence to overcome the showing that a violation occurred. Specifically, there was no credible medical testimony that isopropyl alcohol could lead to positive test results. The designee also discounted Eckmann's testimony, and probation was revoked.

Nothing in the record suggests that the secretary's designate discussed the case with the examiner before reversing. Eckmann claims this violates due process. He points to *City of Appleton v. Department of Industry, Labor & Human Relations,* 67 Wis. 2d 162, 226 N.W.2d 497 (1975), for support. In *Appleton,* the supreme court underscored that while a commission is empowered to reject an examiner's findings in rendering a final decision, it must first comply with constitutional due process. In cases involving the credibility of a witness as a substantial element, the reviewing authority must have the benefit of the demeanor evidence which is lost when the agency decides the controversy without participation of the hearing examiner who heard the testimony. Id. at 169, 226 NW2d at 501. An examiner's conclusions regarding the personal impressions that witnesses made upon him might play a very material part in determining

the weight to be given to the testimony. *Braun v. Industrial Commission*, 36 Wis. 2d 48, 57–58, 153 N.W.2d 81, 85 (1967).

We admit that the due process concerns addressed in *Appleton* and *Braun* might logically apply equally as well to probation revocation hearings. In proceedings under chs. 227 and 102, Stats., the commission may perform a *de novo* review of the evidence presented before the hearing examiner—likewise, in the probation revocation setting. *State ex rel. Foshey v. Wisconsin Department of Health & Social Services*, 102 Wis. 2d 505, 516, 307 N.W.2d 315, 320 (Ct. App. 1981). So, both the commission and the department are reviewing agencies that may reverse where credibility is an issue, even though each reviewing authority is not present at the hearing and did not observe the demeanor of the witnesses.

Therefore, if the department conducting a *de novo* review overturns the examiner on issues affecting credibility, then the same safeguards as mandated for the commission in the *Appleton* line of cases could arguably apply. These safeguards would satisfy due process and would also insure the basis for judicial scrutiny, especially where the decision of the secretary or secretary's designate is contrary to the findings or recommendations of the hearing examiner.[1]

---

[1] The state maintains that no issue of credibility was involved in the designee's decision to reverse the hearing examiner. Rather, the secretary's designate made a different conclusion of law. Therefore, the state concludes that this court need not address the issue since the *Appleton* rule becomes operative only when credibility is at issue. The argument is without merit since it is obvious that credibility was at issue here. The examiner specifically noted that Eckmann denied taking alcohol. The designee, just as specifically, determined that Eckmann's denial was not to be believed when he explained that his work brought him into contact with a type of nondrinkable alcohol. This is because

We cannot adopt Eckmann's argument, however, because, in our opinion, the supreme court has previously ruled otherwise. In *Ramaker v. State,* 73 Wis. 2d 563, 570–71, 243 N.W.2d 534, 538 (1976), the court was faced with a concededly different claim than Eckmann's. Ramaker's counsel argued that when the secretary disagreed with the hearing examiner, he did not adequately set forth the evidence which he relied upon and the reasons for revoking probation. Nonetheless, the court made the all-encompassing statement that:

> Cases relied upon by Mr. Ramaker are inapplicable to probation revocation proceedings, since they relate only to proceedings under ch. 227 and ch. 102, Stats. *Appleton v. ILHR Department* (1975), 67 Wis. 2d 162, 226 N.W. 2d 497; *Transamerica Ins. Co. v. ILHR Department* (1972), 54 Wis. 2d 272, 195 N.W.2d 656.[2]

Since both *Appleton* and *Transamerica* deal, at length, with the need to consult before issuing different findings than the examiner where credibility is at issue, we find the supreme court statement to be a rejection of that need in probation revocation proceedings. We add, however, that the court was faced with a different issue than the specific one claimed here. It is quite possible that the supreme court might wish to distinguish *Ramaker* from this case. That, however, is a function of the supreme court, not this court. So, although we believe Eckmann's

---

he worked prior to the time that a "dirty" specimen was produced, but he also worked prior to the time that a clean specimen was produced. The inference drawn is that Eckmann's explanation carries no credible weight. This is a finding of credibility on the part of the secretary's designate. By reversing the examiner, the designate is saying that Eckmann was untruthful when he denied drinking alcohol.

[2] We find it curious that neither brief cites *Ramaker.*

argument to be meritorious, we decline to detract from the stark statement in *Ramaker*.[3]

The remaining issues will be treated *seriatim*. First, Eckmann notes that the trial judge, on a writ of certiorari, must decide four issues. They are:

(1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and presented its will and not its judgment; and (4) whether the evidence was such that it might *reasonably* make the order or determination in question. [Emphasis added.]

*Foshey*, 102 Wis. 2d at 513, 307 N.W.2d at 318. Eckmann argues that the trial court erred when it considered only whether the department's decision was arbitrary or capricious and ignored the question presented for review which came under test number (4). We hold, however, that the trial court did assess the evidence in light of test (4). The trial court adequately discussed whether sufficient evidence existed that the defendant violated the terms of probation.

Eckmann next argues that there was not substantial evidence in the record to support a finding that he drank alcohol. We are satisfied, however, that there was substantial evidence. A medical technologist testified that the thin-layer chromatography test showed the presence of alcohol.

Eckmann objects to this evidence on grounds that the test was not specific for ethanol. He concludes that failure of the test to be specific prohibits the department from relying on the test alone as "substantial evidence."

---

[3] Eckmann claims that *Morrissey v. Brewer*, 408 U.S. 471 (1972), specifically requires consultation. In fact, nothing in *Morrissey* remotely suggests such a prerequisite.

The nonspecificity of the test goes to the weight of the evidence, not its admissibility. We would agree that reliance on a nonspecific test alone, without corroborating evidence, would be insufficient to meet the burden of proving the identity of the substance beyond a reasonable doubt. *See State v. Wind,* 60 Wis. 2d 267, 272, 208 N.W. 2d 357, 361 (1973). The test which must be met here, however, is the substantial evidence test, a standard not quite on par with the preponderance of the evidence test. In *Robertson Transportation Co., Inc. v. Public Service Commission,* 39 Wis. 2d 653, 658, 159 N.W.2d 636, 638 (1968), the supreme court described substantial evidence as: "[T]hat quantity and quality of evidence which a reasonable man could accept as adequate to support a conclusion." It is apparent that a reasonable person can view the test results as *prima facie* evidence of alcohol consumption. This is in keeping with the spirit of *Morrissey v. Brewer,* 408 U.S. 471, 489 (1972), the landmark case in revocation proceedings. *Morrissey* emphasized that there was "no thought [by the U.S. Supreme Court] to equate . . . revocation to a criminal prosecution in any sense. It is a narrow inquiry[.]" Given the low burden of proof, it was within the secretary's authority as ultimate fact finder to accept or reject the test as *prima facie* reasonable evidence of Eckmann's alcohol consumption. Eckmann had the opportunity to bring in expert testimony to rebut the *prima facie* inference derived by the test results but did not do so.

We also note that the medical technologist testified he queried a pathologist about whether isopropyl, the alcohol used in cosmetics, could be absorbed through the skin in such a manner as to cause a positive test sample. The pathologist replied that even if one bathed or soaked his entire body in isopropyl, it is doubtful that sufficient amounts could cross the skin barrier, so as to manifest itself in the test results. This was hearsay, and the exam-

iner declined to consider it on grounds that a probation violation may not be proven entirely by unsubstantiated hearsay testimony. *State ex rel. Henschel v. Department of Health & Social Services,* 91 Wis. 2d 268, 271, 282 N.W. 2d 618, 619 (Ct. App. 1979).

This hearsay evidence, however, was corroborated. First, the technologist testified, without objection, that ingestion of other types of alcohol would cause medical problems, and Eckmann did not complain of medical problems. Second, when Eckmann originally took the test which produced positive results, he had only been working around isopropyl for two days beforehand. When a subsequent test was conducted, it revealed negative results, even though Eckmann had worked around the same levels of alcohol for five preceding days. The hearsay evidence, therefore, had corroboration. Taken together, the evidence supports the inference that the alcohol found by testing resulted from alcohol consumption. We conclude the secretary's designate could assign the weight he did to the test.

Eckmann next argues that the medical technologist is unqualified to *interpret* the results of the thin-layer chromatography test and that a qualified physician must testify before the test results will be admissible. We disagree. We adhere to the general rule that a physician, chemist, medical technologist, biologist, biochemist, toxicologist or person with similar training or experience is ordinarily qualified as an expert in conducting scientific tests to determine alcohol content in tests and in interpreting the results of such tests. *See* 3 Wharton, *Criminal Evidence* § 591 (13th ed. 1973). Whether or not to allow a witness to testify as an expert is within the discretion of the trial court in criminal cases. Sec. 907.02, Stats. In a probation revocation hearing, it is within the discretion of the department. That discretion was not

abused here. The witness was a registered technologist with HEW (Health, Education and Welfare) and is an expert in the performance of technical procedures. As such, it was within the realm of his knowledge to evaluate the findings or results. He testified the results meant that alcohol was in the urine. That kind of testimony is not outside the realm of his expertise.

Eckmann next argues that discarding the balance of the urine specimen constituted a deprivation of his right of confrontation and a violation of his due process rights. He relies on *State v. Booth,* 98 Wis. 2d 20, 295 N.W.2d 194 (Ct. App. 1980), and *State v. Raduege,* 100 Wis. 2d 27, 301 N.W.2d 259 (Ct. App. 1980). Both cases stand for the proposition that the destruction of the test ampoule in an operating under the influence case with breathalyzer evidence is violative of due process.

*Booth* and *Raduege* are distinguishable, however. First, in *Booth,* "substantial expert testimony was offered to show how analysis of a used test ampoule would either corroborate or refute the original test results." *Booth,* 98 Wis. 2d at 29, 295 N.W.2d at 199. No such expert testimony was offered here. We cannot tell, therefore, whether preservation would have made any difference even if Eckmann had been able to engage an expert to test the urine specimen. Second, the *Booth* court was concerned that the breathalyzer machine cannot be cross-examined, therefore blunting confrontation. This is because a lay person operates the machine; it is the machine which is really testifying, not the lay person. This case is distinguishable because a qualified medical technologist was available for examination and cross-examination. He testified, not a machine. No confrontation or due process violation occurred here.

Finally, Eckmann claims the decision of the department to revoke probation simply because alcohol was

found amounted to an arbitrary exercise of discretion. We disagree. His alcoholic problems were substantial enough to be the subject of modification of his probation conditions. Probation is an affirmative correction tool which is used not because it is of maximum benefit to the defendant but because it is of maximum benefit to society. ABA Standards Relating to Probation (1970). Probation proceeds on the simple formula that taking a person out of society is not the best way to help the person learn to live in society. *Id.* When assistance in the process of learning to live in society is to no avail, the maximum value to society in keeping a person on probation is lessened. Here, the secretary noted in his findings as follows:

Exhibit No. 8, admitted as testimony of the agent, sets forth the past efforts of the Court and the Bureau to assist Mr. Eckmann with his alcohol and drug problem while under supervision. In spite of these efforts, the client continued, on his own admission to the agent, to consume drugs and alcohol. Numerous alternatives to revocation have not only been considered, but have been tried. Repeated warnings and modification of rules were to no avail.

We agree with the trial judge here that the decision to revoke probation was necessary and that a failure to do so would likely result in similar conduct on Eckmann's part, thus depreciating the seriousness of his probation violation.

*By the Court.*—Order affirmed.