STATE of Wisconsin EX REL. Stanley WASHINGTON, Petitioner-Appellant,†

v.

David H. SCHWARZ, Administrator, Division of Hearings and Appeals, Respondent-Respondent.

Court of Appeals

*No. 00–0004. Submitted on briefs July 12, 2000.—Decided October 4, 2000.*

## 2000 WI App 235

(Also reported in 620 N.W.2d 414.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James L. Fullin*, assistant state public defender.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1.  NETTESHEIM, J.  The Department of Corrections (department) sought to revoke Stanley Washington's probation based principally upon his uncorroborated extrajudicial admission that he had committed a sexual assault while he was on probation.

445

Relying on this evidence, an administrative law judge (ALJ) revoked Washington's probation. Upon review, the Division of Hearings and Appeals (division) and the circuit court respectively upheld the revocation decision.

¶ 2.   On appeal, Washington challenges the sufficiency of the evidence to support the revocation decision. He contends that the confession corroboration requirement applicable to a criminal proceeding should also apply in a probation revocation proceeding. Because his admission was not independently corroborated, Washington argues that the probation revocation order is not supported by substantial evidence. Washington also contends that his admission did not constitute substantial evidence because he was mentally ill at the time he made the statement.

¶ 3.   We hold that the confession corroboration rule does not apply in a probation revocation proceeding. And because the circumstances surrounding Washington's extrajudicial admission otherwise demonstrate that the admission was trustworthy and reliable, we hold that substantial evidence supported the revocation order. For the same reason, we reject Washington's claim that the evidence of his mental health history renders the evidence insufficient.

### Facts and Procedural History

¶ 4.   The historical facts in this case are not in dispute. On January 26, 1993, Washington was convicted of two counts of second-degree sexual assault against a female victim. He was sentenced to two concurrent eight-year prison terms. However, the sentences were stayed, and Washington was placed on ten years' probation with attendant conditions of probation.

¶ 5. The event that precipitated the department's decision to revoke Washington's probation occurred on September 12, 1998, during a relapse prevention group meeting for sex offenders. At that meeting, Washington disclosed to other group members and to the group leader, Joseph Henger, that he had raped a female member of his church while on probation. Henger reported the incident to Washington's probation agent. When questioned about the incident by his probation officer, Washington declined to answer and refused to provide a written statement. As a result, the department initiated probation revocation proceedings.

¶ 6. The department cited three grounds in support of the revocation request: (1) that Washington had committed a sexual assault during the period of his probation in violation of Rule 1 of the rules of probation;[1] (2) that Washington had refused to provide his probation agent with a verbal or written statement

---

[1] The relevant rules of Washington's probation are:

1. You shall avoid all conduct which is in violation of federal or state statute, municipal or county ordinances or which is not in the best interest of the public welfare or your rehabilitation.

. . . .

4. You shall inform your agent of your whereabouts and activities as he/she directs.

. . . .

13. You shall provide true and correct information verbally and in writing, in response to inquiries by the agent.

. . . .

15. You shall follow any specific rules that may be issued by an agent to achieve the goals and objectives of your supervision. The rules may be modified at any time, as appropriate. The specific rules imposed at this time are:

. . . .

447

regarding the disclosure he made at his September 12 group meeting in violation of Rules 1, 4 and 13; and (3) that Washington had engaged in a sexual relationship without first discussing the matter or obtaining his probation agent's approval in violation of Rules 1 and 15D.

¶ 7. Washington contested the revocation and an ALJ conducted a revocation hearing over a period of four days. Washington was represented by counsel at the hearing. In addition to other witnesses, Henger and certain members of the relapse prevention group testified at the hearing.

¶ 8. In the decision revoking Washington's probation, the ALJ made the following findings of fact. Shortly before the original sentencing in this case, Washington was baptized as a member of the Twenty-Third Avenue Church of Christ. Thereafter, he became a participating church member and served as the church's financial secretary. As part of his probation supervision, Washington was involved in a sex offender treatment program. Eventually, he graduated to the relapse prevention group. On August 15, 1998, Washington revealed to the group that he was having marital problems related to his "womanizing" at his church. On August 29, Washington stated to the group that he had used his church position to procure women and that he had raped five women during his adult life.

¶ 9. At the September 12, 1998, group meeting, Washington again reported to the group that he had raped five women. In addition, he provided a detailed account of a particular rape of a female church member which had occurred during his probationary period.

D. You shall not enter into any dating, intimate, or sexual relationship with any person without first discussing this with your agent and obtaining your agent's approval.

During this meeting, Washington did not appear any different than he had at previous group meetings and his "demeanor and presentation" were consistent with that displayed at the two previous meetings when he spoke of his "womanizing" and the five prior rapes. Washington believed that his disclosures were confidential and could not be revealed. However, all of the participants in the group had been previously warned by Henger, the group leader, that he was under a duty to report any "admissions of crimes or violations" to the department.

¶ 10. When questioned by his probation officer about the admission, Washington refused to provide a verbal or written statement because he was afraid of the custodial consequences and he did not want to incriminate himself. However, Washington did tell his probation officer that his statements during the group meetings were confidential and not subject to sanction by the department. Although Washington refused to provide his probation officer with any statements regarding his admission, neither did he deny the admission.

¶ 11. The ALJ's findings also addressed the evidence concerning Washington's mental illness. During the time periods relevant to this case, Washington was treating with Dr. Pushparanee Babusukumar, a psychiatrist. During the fall of 1996, Washington experienced a psychotic episode. At that time, Babusukumar determined that Washington was suffering from "major depression with psychotic features." In response, Babusukumar prescribed an antipsychotic medication which Washington took until the fall of 1997 when Babusukumar discontinued the prescription. Babusukumar determined to a reasonable degree of medical certainty that Washington was psychotic

when she saw him in October 1998, but she could not state that Washington was psychotic during September when he had made the crucial admission in this case. On October 22, 1998, Washington was committed under ch. 51 of the Wisconsin Statutes and antipsychotic medications were again prescribed. At the revocation hearing, Washington was mentally stable.

¶ 12. During a break at one of the revocation hearings, Washington told Henger that he was not psychotic during the September 12, 1998 group meeting and he shook his head affirmatively when Henger asked him if he had committed the sexual assault while on probation.

¶ 13. Finally, the ALJ determined that all of the witnesses, except for Washington, who testified during the hearing were truthful and reliable.

¶ 14. Based on these findings, the ALJ revoked Washington's probation. Washington appealed to the division, challenging the sufficiency of the evidence and pointing to the following additional evidence. First, no person had come forward or been identified as a victim of the sexual assault that Washington disclosed to the group. Second, the Reverend John Wright, Washington's pastor, testified that he had questioned the female members of the congregation and none had reported a sexual assault by Washington. Third, contrary to the testimony of Henger and the group members that Washington's admission included a statement that he had told Wright about the sexual assault, Wright testified that Washington never told him of any sexual assault that he had committed while on supervision. Finally, Washington points to the testimony of Wright and his wife that Washington had been acting strangely for some time prior to the September 12 meeting.

¶ 15. The division rejected Washington's argument and sustained the ALJ's decision in an amended appeal decision. Washington then filed a petition for a writ of certiorari with the circuit court seeking review of the revocation order. After reviewing the record and briefs submitted by the parties, the court held that credible and substantial evidence supported the revocation order. The court dismissed Washington's certiorari action. Washington further appeals to this court.

### Standard of Review

¶ 16. "[P]robation revocation is the product of an administrative, civil proceeding." *State ex rel. Cramer v. Wisconsin Court of Appeals*, 2000 WI 86, ¶ 28, 236 Wis. 2d 473, 613 N.W.2d 591. Appeal of such a decision is accomplished by a writ of certiorari to the circuit court, *see id.*, and is not a de novo review. *See Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978). On review to this court, we apply the same standard of review as the circuit court. *See State ex rel. Cox v. DHSS*, 105 Wis. 2d 378, 380, 314 N.W.2d 148 (Ct. App. 1981). Review by certiorari of a revocation decision is limited to the following questions:

> (1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Van Ermen*, 84 Wis. 2d at 63 (citation omitted).

¶ 17.	In this case, only the fourth question is implicated because Washington is challenging the sufficiency of the evidence to support the revocation decision. "[T]he department has the burden to prove the allegation of the violation by a preponderance of the evidence." *State ex rel. Thompson v. Riveland*, 109 Wis. 2d 580, 585, 326 N.W.2d 768 (1982). When the sufficiency of the evidence is challenged, we are limited to the question of whether there is substantial evidence to support the department's decision. *See id.* at 585–86. This is described as a "low burden of proof." *State ex rel. Eckmann v. DHSS*, 114 Wis. 2d 35, 43, 337 N.W.2d 840 (Ct. App. 1983). Substantial evidence is the "quantity and quality of evidence which a reasonable [person] could accept as adequate to support a conclusion." *Id.* (citation omitted). However, assigning weight to the evidence in a revocation hearing is the province of the department. *See Van Ermen*, 84 Wis. 2d at 64.

### *Discussion*

¶ 18.	Washington argues that the revocation of his probation is grounded solely upon his uncorroborated extrajudicial admission. He contends that such an admission cannot constitute substantial evidence and, as a result, the revocation decision is arbitrary and capricious.

### *Confession Corroboration Requirement and Probation Revocation*

¶ 19.	Our supreme court restated the confession corroboration requirement in *Holt v. State*, 17 Wis. 2d 468, 117 N.W.2d 626 (1962):

> All the elements of the crime do not have to be proved independently of an accused's confession; however, there must be some corroboration of the confession in order to support a conviction. Such corroboration is required in order to produce a confidence in the truth of the confession. The corroboration, however, can be far less than is necessary to establish the crime independently of the confession. *If there is corroboration of any significant fact, that is sufficient under the Wisconsin test.*

*Id.* at 480 (emphasis added). Washington contends that the record in this case does not reveal "corroboration of any significant fact" of the confession. *See id.* He acknowledges that, to date in Wisconsin, the confession corroboration rule has been applied only in criminal prosecutions. But he argues that the rule should apply in a probation revocation proceeding as well.

¶ 20. We first observe that a probation revocation proceeding is a civil proceeding. *See Cramer*, 2000 WI 86 at ¶ 28.

¶ 21. The purpose of the confession corroboration rule is to produce confidence in the truth of the confession, *see Holt*, 17 Wis. 2d at 480, so that a criminal conviction is not grounded on the admission or confession of the accused alone. *See State v. Verhasselt*, 83 Wis. 2d 647, 661, 266 N.W.2d 342 (1978). Obviously, these concerns are not present in a probation revocation setting since the probationer is already convicted.

¶ 22. Moreover, unlike a criminal prosecution in which the absolute liberty rights of the accused are paramount, a revocation proceeding addresses the conditional liberty status of the probationer. *See State ex rel. Flowers v. DHSS*, 81 Wis. 2d 376, 386, 260 N.W.2d 727 (1978). Also unlike a criminal prosecution, the

interests and protection of the public are important considerations in a revocation proceeding. *See id.* at 385. In making the revocation determination, the department is concerned not only with the threats to the safety of the general community, but also with behavior that is inimical to the probationer's rehabilitation. *See id.* "The ends of parole revocation are therefore distinct from the punitive functions of the criminal law, and the revocation decision requires wide-ranging consideration of intangible non-legal factors irrelevant to a criminal prosecution." *Id.*

¶ 23.   These fundamental differences have also produced more relaxed procedures in a revocation proceeding. For instance, a revocation proceeding does not require a judicial hearing, the rules of evidence do not strictly apply, and the privilege against self-incrimination does not preclude consideration of an inculpatory statement or a refusal to answer questions. *See id.* at 384. In summary, the protections afforded an accused in a probation revocation proceeding are lesser than those afforded in a criminal prosecution.

¶ 24.   For these reasons, we decline to extend the confession corroboration requirement to a probation revocation proceeding. But this does not mean that a probationer's extrajudicial admission is per se an adequate basis for revocation. This is because the substantial evidence test requires a "quantity and quality of evidence which a reasonable [person] could accept as adequate to support a conclusion." *Eckmann,* 114 Wis. 2d at 43 (citation omitted). In a case such as this, this means that the admission must carry sufficient indicia of reliability or credence such that the fact

454

finder can confidently rely upon it to support the conclusion that revocation is appropriate and necessary.[2]

## The Substantial Evidence Test

¶ 25.   Having rejected Washington's argument that we should apply the confession corroboration requirement, we now measure the evidence in this case against the substantial evidence test.

¶ 26.   We begin by recalling our proper appellate role. It is the province of the department, not this court, to weigh the evidence and our role is not to substitute our view of the evidence for that of the department. *See Van Ermen*, 84 Wis. 2d at 64. Thus, as with any other

---

[2] Our holding is in accord with the majority of courts that have considered this question, although some of those cases address the corroboration requirement under the law of *corpus delecti*—not under the specific language of the rule as set out in *Holt v. State*, 17 Wis. 2d 468, 480, 117 N.W.2d 626 (1962), which requires "corroboration of any significant fact." *See State v. Lay*, 546 P.2d 41, 42 (Ariz. Ct. App. 1976); *Selph v. State*, 570 S.W.2d 256, 259 (Ark. 1978); *People v. Monette*, 25 Cal. App. 4th 1572, 1575 (Cal. Ct. App. 1994) ("[b]ecause the probation revocation hearing differs so substantially from a criminal prosecution, the corpus delicti rule is inapplicable"); *State ex rel. Russell v. McGlothin*, 427 So. 2d 280, 282 (Fla. Dist. Ct. App. 1983); *People v. Woznick*, 663 N.E.2d 1037, 1039 (Ill. App. Ct. 1996) ("a trial court may revoke a defendant's probation based solely on defendant's voluntary confession or reliable extrajudicial admission that he violated the conditions of his probation"); *Richeson v. State*, 648 N.E.2d 384, 389 (Ind. Ct. App. 1995); *Shumaker v. State*, 431 N.E.2d 862, 864 (Ind. Ct. App. 1982); *State v. Generoso*, 384 A.2d 189, 192–93 (N.J. Super. Ct. App. Div. 1978); *State v. Sanchez*, 790 P.2d 515, 516–17 (N.M. Ct. App. 1990); *Commonwealth v. Kavanaugh*, 482 A.2d 1128, 1133 (Pa. Super. Ct. 1984).

fact finder, we properly defer to the department's credibility findings. *See Day v. State,* 92 Wis. 2d 392, 400, 284 N.W.2d 666 (1979).

¶ 27. In conducting this analysis, we begin with the ALJ's credibility determinations. Washington testified at the revocation hearings, denying that he had made the admission at the September 12, 1998 group meeting, denying that he had made the further admission to Henger at a break during one of the revocation hearings, and denying that he had invoked his right against self-incrimination in his discussions with his probation officer. The ALJ rejected these denials and instead adopted the testimony of the countervailing witnesses—Henger, the members of the group and the probation officer—as to each of these events. Moreover, the ALJ's rejection of Washington's credibility was not limited to just these three episodes. Rather, the ALJ rejected all of Washington's testimony on credibility grounds.

¶ 28. Speaking to the reliability of Washington's September 12, 1998 admission, the ALJ observed that Washington believed that the group meetings were confidential as to any statements he would make, thus lending credence to the admission. We agree. The admission came during a therapeutic session of Washington's relapse prevention group. In such a setting, it is reasonable to believe that Washington would feel comfortable enough to let his guard down and tell the truth.

¶ 29. We also observe that Washington's September 12 admission was a continuation of the theme, albeit with more detail, of his prior statements during the August meetings of the group. In those meetings, Washington revealed that he was having trouble in his marriage due to his "womanizing" and that he had

456

previously assaulted five women. This suggests that Washington's later admission on September 12 was not the rambling or outburst of a distorted mind, but a reasoned revelation by a guilty mind. Washington's admission and related statements also carry reliability because they were uttered as part of a group discussion treatment program designed to prevent sex offenders from relapsing into their prior behavior. Presumably, a member's prior sexual conduct would be a germane topic in such a setting. We also take note that Washington's statement that he had raped five women was at least partially true since *in this very case* Washington was on probation for two counts of sexual assault against a female victim.

¶ 30. We further note that just as Washington's admissions did not begin with the September 12 statement, neither did they stop there. During the revocation proceedings themselves, *at a time when he was mentally stable,* Washington told Henger during a break that he was not psychotic during the September 12 meeting and that he was "scared" of going back to prison. Equally important, Washington nodded affirmatively during this conversation in response to Henger's question of whether he had committed a sexual assault while on probation. Henger documented this conversation in a letter to Washington's probation officer, stating that Washington said that his mental illness defense was "purely out of desperation and fear of going back to prison."

¶ 31. The ALJ further observed that Washington never denied making his admission to the group when his probation officer twice questioned him about the matter. As noted earlier, the privilege against self-incrimination does not preclude consideration of a

refusal to answer questions. *See Flowers*, 81 Wis. 2d at 384.

¶ 32. Washington's mental health history undoubtedly represents evidence in his favor. But Babusukumar could not testify that Washington was psychotic at the time of his September 12 admission. Nor could she testify how long Washington would have been psychotic prior to her October 22 diagnosis. In addition, the ALJ considered the testimony of Henger and the other group members that Washington's appearance and demeanor on September 12 appeared consistent with their prior observations of him. Henger described Washington's admission as occurring in the course of "a normal Stanley Washington conversation" and testified that Washington was oriented as to time and place, could recall what he said in previous treatment groups, and did not appear delusional.[3]

¶ 33. Finally, we again note Washington's conversation with Henger during the revocation proceedings since it also bears on the topic of Washington's mental illness. During this conversation, Washington told Henger that he was not psychotic when he made his September 12 admission and that he

_____

[3] We recognize that Babusukumar is a trained professional psychiatrist, while Henger is not. Nonetheless, Babusukumar's appointments with Washington typically lasted only twenty minutes and relied heavily on his self-reporting. Henger, on the other hand, testified to seeing Washington "approximately fifty times for an hour and a half each time" between 1995 and 1998 and was aware of his history of depression. So while Henger did not have Babusukumar's degree of expertise, he did have some training in the area of assessing mental health and had significant opportunities to observe Washington. It was for the ALJ and the division to weigh the evidence on this point. *See Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978).

was "scared" of going back to prison. This testimony was consistent with the letter Henger had written to Washington's probation agent after this conversation where Henger reported that Washington had told him that "his defense of being psychotic was purely out of desperation and fear of going back to prison."

¶ 34. The absence of an identifiable victim supports Washington's claim. But as the division appropriately noted in its decision, "Women may choose not to report a sexual assault due to fear, embarrassment, or a variety of other reasons." We agree.

¶ 35. In summary, it was the responsibility of the ALJ and the division to weigh the evidence of Washington's claimed psychotic condition against the evidence supporting the reliability and credibility of his admission. *See Van Ermen*, 84 Wis. 2d at 64. This the ALJ and the division have done, and we are obligated to respect that determination if the evidence otherwise satisfies the substantial evidence test. *See id.*

¶ 36. We conclude that Washington's September 12, 1998 extrajudicial admission carried sufficient indicia of reliability and credence such that the division properly relied on the admission when upholding the ALJ's decision revoking Washington's probation. As such, in the words of the substantial evidence test, the admission represented a "quantity and quality of evidence which a reasonable [person] could accept as adequate to support a conclusion." *Eckmann*, 114 Wis. 2d at 43 (citation omitted).

### Conclusion

¶ 37. We hold that substantial evidence supports the division's revocation of Washington's probation. We

affirm the circuit court order dismissing Washington's writ of certiorari.

   *By the Court.*—Order affirmed.