COURT OF APPEALS
DECISION
DATED AND FILED

May 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP1140**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV4878

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN EX REL. WISCONSIN DEPARTMENT OF CORRECTIONS, DIVISION OF COMMUNITY CORRECTIONS,

PETITIONER-RESPONDENT,

V.

BRIAN HAYES ADMINISTRATOR, DIVISION OF HEARINGS AND APPEALS,

RESPONDENT-APPELLANT,

KEYO SELLERS,

INTERVENOR-CO-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: THOMAS J. McADAMS, Judge. *Reversed.*

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM.   This is a review of a decision by Brian Hayes, in his role as Administrator of Wisconsin's Division of Hearings and Appeals ("DHA"), not to revoke Keyo Sellers's probation.  The circuit court granted a writ of certiorari in favor of the Wisconsin Department of Corrections ("DOC"), which reversed DHA's decision not to revoke Sellers's probation.  On appeal, DHA and Sellers ask this court to reverse the circuit court and affirm DHA's decision not to revoke Sellers's probation.

¶2   We agree with DHA and Sellers.  Therefore, we reverse the order of the circuit court and affirm DHA's decision not to revoke Sellers's probation.

## BACKGROUND

¶3   In June 2019, Sellers was placed on probation for a drug conviction. In March 2022, DOC initiated revocation proceedings, alleging that Sellers committed five violations of the terms of his probation: (1) entering K.A.B.'s residence without her consent; (2) sexually assaulting K.A.B.; (3) taking $30 from K.A.B. without her consent; (4) several days later, trespassing on K.A.B.'s porch and looking through the windows of her home without her consent; and (5) providing false information to his probation agent.  Sellers stipulated to allegation (5) at the revocation hearing.

¶4   In support of the remaining allegations, DOC presented several witnesses, but it did not call K.A.B. to testify.  Sellers's probation agent, Geraldine Kellen, testified that K.A.B. told her and the police that "she can't 100% ID her assailant," so Agent Kellen "didn't feel it was necessary to have her come in and

provide testimony and go through the trauma of her assault to only say that she believes that Mr. Sellers could be the assailant, but she doesn't know 100%." Instead, K.A.B.'s written statement to Agent Kellen describing the events was admitted into evidence.

¶5    Michelle Burns, an analyst with the Wisconsin State Crime Laboratories, testified regarding an analysis she performed on K.A.B.'s sexual assault kit and Sellers's buccal swab. She prepared a DNA report and testified that, based upon her analysis, a male DNA profile was developed that was "consistent with" Sellers. She explained that, as a "statistical estimate," the male DNA found in K.A.B.'s sexual assault kit "could also match one in every 278 African Americans."[1] Sellers's counsel asked Administrative Law Judge ("ALJ") Martha Carlson to take judicial notice that, based on census data, there would be 289 African Americans in Milwaukee who would also match the DNA profile.[2]

¶6    In support of the trespassing allegations, DOC filed security camera video showing a man walking on K.A.B.'s porch and looking through her windows. Milwaukee Police Officer Michael Walker testified that he or his colleague showed video-still images of the man on the porch to K.A.B., and she believed that the man

---

[1] Burns explained that there are two types of DNA testing used in a forensic setting: autosomal DNA testing, and Y-STR DNA testing. Pursuant to Burns's testimony, autosomal testing is the most common method for forensic purposes, as it allows analysts to assess an individual's DNA at multiple locations in order to "individually identify" someone. Y-STR DNA testing compares locations on the Y chromosome specifically, and Burns testified that in Y-STR testing, it is "never possible to individually identify a person because the male DNA is generally inherited ... from father to son, so all paternally related males would be expected to have the same DNA profile[.]" Burns conducted Y-STR DNA testing (and thus, could never individually identify Sellers), but because she was able to obtain only a partial profile, it was "likely" that the profile would also appear in individuals who are not related to Sellers.

[2] The record reveals that, if the DNA could match one in every 278 African Americans, and there are 108,173 African American males in Milwaukee per the census data cited by Sellers's counsel, then there would actually be 389 individuals who would match the DNA profile, not 289.

in the images was the man who assaulted her. Officer Walker testified that the video footage was run through facial-recognition software and that three of Sellers's previous booking photos in the software's database matched at 98.2%, 92.7%, and 85.5%, respectively, to the video-still images of the man on K.A.B.'s porch. Agent Kellen testified that she had supervised Sellers since October 2019, that she viewed the security camera video, and that she was "99%" sure that "it was Mr. Sellers" on the video. Officer Walker testified that two of his colleagues interviewed Sellers's ex-wife, who identified the man in the video-still images as Sellers.

¶7      Sellers provided statements to DOC wherein he denied ever being on K.A.B.'s property, denied that he was the person in the security camera video, and denied sexually assaulting anyone.

¶8      On May 9, 2022, ALJ Carlson issued a decision revoking Sellers's probation. ALJ Carlson held that "[t]he credible testimony of Analyst Burns confirms that a DNA profile consistent with Mr. Sellers was recovered from K.A.B. There is no credible explanation for why Mr. Sellers'[s] DNA would be on K.A.B. but for the assault." She also found that "Mr. Sellers can be seen on surveillance video trespassing onto K.A.B.'s porch and looking into her windows without permission on a later date after the sexual assault occurred." ALJ Carlson concluded that "allegations 1-4 have been established by a preponderance of the evidence[,]" and together with Sellers's stipulation as to allegation 5, ALJ Carlson determined that revocation was appropriate.

¶9      Sellers appealed ALJ Carlson's decision to DHA, and on June 17, 2022, DHA issued a decision reversing ALJ Carlson's revocation decision. After reviewing the evidence de novo, DHA concluded that DOC had not proven any of the contested allegations. DHA determined that "K.A.B.'s account of the events is

4

critical to the DOC's allegations" because it was "the only account that describes the alleged non-consensual entry into K.A.B.'s home, the alleged non-consensual sexual contact with her, the alleged non-consensual taking of $30 from her, and the subsequent alleged trespassing on her property (which requires evidence of non-consent)." DHA found that without K.A.B.'s testimony, Sellers's testimony denying the allegations was "the only non-hearsay account of what Sellers was actually doing."

¶10 DHA concluded that relying on hearsay statements that DOC attributed to K.A.B. deprived Sellers of his constitutionally protected right to confront his accuser. DHA evaluated whether there was good cause to justify denying Sellers his right to confrontation and concluded that there was not, because DOC's choice not to subpoena K.A.B. was not due to any "difficulty, expense, or other barrier to obtaining live testimony." DHA also determined that K.A.B.'s out-of-court, testimonial hearsay statements were not admissible under Wisconsin's rules of evidence. DHA then applied the relevant criteria and decided that revocation was not warranted because the only allegation that was proven was that Sellers provided false information to his probation agent, and Agent Kellen testified that "the DOC would not have pursued revocation for [only] the proven violation."

¶11 DOC challenged DHA's decision on a petition for a writ of certiorari in the circuit court. On May 1, 2023, the circuit court entered a written decision granting DOC's request and reversing DHA's decision, thus reinstating Sellers's revocation, but the circuit court also granted DHA's and Sellers's motions to stay its decision pending appeal.[3]

---

[3] The circuit court noted in its decision that if the issue "were solely about the sufficiency of the evidence, the standard of review would dictate that the DHA's discretion prevail."

¶12    DHA and Sellers appealed.

## DISCUSSION

¶13    When this court reviews a writ of certiorari, it reviews the agency's decision, not the decision of the circuit court. *Kraus v. City of Waukesha Police & Fire Comm'n*, 2003 WI 51, ¶10, 261 Wis. 2d 485, 662 N.W.2d 294. When reviewing a revocation decision, we "defer to the decision of the [DHA], applying the same standard as the circuit court." *State ex rel. Simpson v. Schwarz*, 2002 WI App 7, ¶10, 250 Wis. 2d 214, 640 N.W.2d 527. The review is limited to the following questions: "(1) whether DHA kept within its jurisdiction; (2) whether DHA acted according to law; (3) whether DHA's actions were arbitrary, oppressive or unreasonable and represented its will rather than its judgment; (4) and whether the evidence was such that DHA might reasonably make the decision in question." *Id.*

¶14    In probation revocation cases, a defendant has a conditional Fourteenth Amendment right to confront adverse witnesses. *Gagnon v. Scarpelli*, 411 U.S. 778, 782-86 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). A hearing officer must find "good cause" before denying this right in order to "protect the defendant against revocation of probation in a constitutionally unfair manner." *Black v. Romano*, 471 U.S. 606, 611-13 (1985); *Simpson*, 250 Wis. 2d 214, ¶15. However, a hearing examiner's failure to specifically make a finding of good cause does not automatically require reversal. *Id.*, ¶¶15-16. "[T]he failure to make a specific finding of good cause is harmless where good cause exists, its basis is found in the record, and its finding is implicit in the ALJ's ruling." *Id.*, ¶16.

¶15    There are two recognized tests for determining whether there is good cause to deny confrontation at a revocation hearing. *Id.*, ¶¶20-22. In reaching its

decision not to revoke Sellers's probation, DHA applied both tests and concluded that DOC failed to satisfy either one. On appeal, however, DOC does not appear to argue that this conclusion was erroneous, and it concedes that DHA kept within its jurisdiction and acted according to law.[4] Instead, DOC argues that ALJ Carlson did not need to find good cause to consider K.A.B.'s out-of-court, testimonial hearsay statements because she did not rely on any of these statements in reaching her conclusion to revoke Sellers's probation. DOC further argues that ALJ Carlson's decision to revoke was supported by substantial non-hearsay evidence, namely, the DNA evidence and surveillance camera footage.

¶16    DOC's argument fails on a fundamental level because we do not review the ALJ's decision; instead, we review DHA's decision not to revoke Sellers's probation, and we defer to DHA's determinations. *Kraus*, 261 Wis. 2d 485, ¶10; *Von Arx v. Schwarz*, 185 Wis. 2d 645, 655-56, 517 N.W.2d 540 (Ct. App. 1994). The "ultimate responsibility" for making findings lies with DHA, not ALJ Carlson, *see* *Goranson v. DILHR*, 94 Wis. 2d 537, 545, 289 N.W.2d 270 (1980), and the decision of whether to revoke probation is committed to the discretion of DHA. *State ex rel. Lyons v. DHSS*, 105 Wis. 2d 146, 151, 312 N.W.2d 868 (Ct. App. 1981).

¶17    If substantial evidence exists supporting DHA's decision, it must be affirmed, even where the evidence supports a contrary conclusion. *Von Arx*, 185 Wis. 2d at 656. "Substantial evidence is evidence that is relevant, credible,

---

[4] DOC's only response is that DHA and Sellers forfeited the confrontation argument because Sellers did not raise it during his administrative appeal of ALJ Carlson's decision. On its face, this argument would not apply to DHA. Even as to Sellers, DOC's forfeiture argument fails because it is DHA's decision that is subject to review. *See* *Goranson v. DILHR*, 94 Wis. 2d 537, 545, 289 N.W.2d 270 (1980). Here, DHA addressed Sellers's due process rights directly, and those arguments are proper for appellate review.

probative, and of a quantum upon which a reasonable fact finder could base a conclusion." *Cornwell Personnel Assoc. v. LIRC*, 175 Wis. 2d 537, 544, 499 N.W.2d 705 (Ct. App. 1993). "This is described as a 'low burden of proof.'" *State ex rel. Washington v. Schwarz*, 2000 WI App 235, ¶17, 239 Wis. 2d 443, 620 N.W.2d 414 (citation omitted). On certiorari review, we are not permitted to re-weigh or substitute a different view of the evidence in place of DHA's. *Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978).

¶18    DOC argues that DHA ignored the DNA and security camera evidence in reaching its decision, and that no reasonable person considering this evidence could have reached the decision not to revoke Sellers's probation. *See Simpson*, 250 Wis. 2d 214, ¶10.

¶19    We disagree. Excluding K.A.B.'s statement, the only account of the events was Sellers's account, which was a complete denial of the allegations. Although there was DNA evidence found in K.A.B.'s sexual assault kit that was "consistent with" Sellers's DNA, this evidence was by no means conclusive in that the DNA evidence was also "consistent with" almost 400 African American male profiles in Milwaukee alone. With respect to the security camera footage showing a man on K.A.B.'s porch, even if we accept that it would be unreasonable to conclude that the man in the video was anyone but Sellers, it was not unreasonable, based on the evidence in the record, to conclude that K.A.B.'s testimony was necessary for DOC to prove all the elements of the alleged probation violations (e.g., non-consent, and that the person on the porch was also the person who sexually assaulted K.A.B.). That is, DHA concluded that DOC had not met its burden of proof if K.A.B.'s statement was not considered.

¶20 Where "substantial evidence" exists supporting two contrary conclusions, we defer to the conclusion reached by DHA. ***Von Arx***, 185 Wis. 2d at 656. It was not unreasonable for DHA to conclude, based on the evidence in the record and without considering K.A.B.'s out-of-court, testimonial hearsay statements, that DOC failed to prove allegations (1)-(4), and DOC admitted that it would not have pursued revocation for only the proven allegation (5).

¶21 DOC's sole argument is that the non-hearsay evidence was so overwhelming that DHA acted unreasonably by deciding not to revoke Sellers's probation. However, we conclude that DHA's findings on the evidence are reasonable, and as such, they are conclusive. DHA's actions were not arbitrary, oppressive, or unreasonable, and the evidence was such that DHA might reasonably make the decision not to revoke. ***Simpson***, 250 Wis. 2d 214, ¶10. We therefore reverse the circuit court and affirm DHA's decision not to revoke Sellers's probation.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.