COURT OF APPEALS
DECISION
DATED AND FILED

September 16, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP700**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV538

IN COURT OF APPEALS
DISTRICT III

---

RYAN RICHESON AND JRSCE HOLDINGS, LLC,

    PLAINTIFFS-APPELLANTS,

 V.

TOWN OF HORTONIA,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Outagamie County: MARK G. SCHROEDER, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Ryan Richeson and JRSCE Holdings, LLC, (collectively, Richeson) appeal from an order granting summary judgment in favor

of the Town of Hortonia and denying Richeson's request for certiorari relief from the Town's denial of his rezoning and conditional use permit (CUP) applications. Because we conclude the Town did not err by denying the applications, we affirm the circuit court's order upholding the Town's decisions.

## BACKGROUND

¶2     Richeson purchased property located on County Road M in the Town in 2019. The property is a split-zoned property, wherein the northern portion of the property, which abuts County Road M, is zoned C-1 Commercial, and the southern portion is zoned R-1 Residential. *See* TOWN OF HORTONIA, WIS., CHAPTER 17: ZONING REGULATIONS § 17.3.01 (Oct. 28, 2020).[1]     The R-1 Residential portion of the property is contiguous with six other residential-zoned parcels. When Richeson purchased the property, he was aware that it was split-zoned. Nevertheless, and based on the alleged assurances from Town representatives that the property could be rezoned commercial because "it's not in the interest of the Town to have multiple zoning classifications on a single parcel," Richeson purchased the property and began operating his landscaping business on the entirety of the property.

¶3     In 2020, Richeson contacted the Town to discuss establishing a "commercial incubator"[2] on the property alongside his landscaping business.

---

[1] All references to the Zoning Regulations in this decision are to the October 28, 2020 amendment.

[2] A commercial incubator is defined as

(continued)

Richeson's plan was "[t]o construct and operate 47 incubator business spaces in 3 different sizes of buildings," which would "be leased out to tenants." A commercial incubator is not allowed in a R-1 Residential district, but it is allowable in the C-1 Commercial district as a conditional use, requiring issuance of a CUP. *See* ZONING REGULATIONS §§ 17.3.07(B)-(D), 17.3.10(D)(6). Accordingly, in order to bring his plan to fruition, Richeson required three approvals from the Town: (1) rezoning of the residential portion of his property to C-1 Commercial; (2) a CUP, which was dependent upon successful rezoning; and (3) a site plan, which the Town requires for all new structures in certain zoning districts and which imposes general design requirements to promote compatible development, stabilize property values, and prevent depreciation.

¶4 The rezoning and CUP applications were first discussed at the Town's plan commission meeting on April 20, 2022. During the meeting, Richeson presented his applications, and the plan commission heard public comments from members of the community, including two letters read into the record. The comments addressed the impact of increased commercial operations on the nearby residential properties, the impact on the neighborhood atmosphere, the possible view obstruction and other aesthetic issues, noise and light pollution,

---

a public or private facility or structure designed to cultivate and accelerate the growth of entrepreneurial endeavors by providing an array of business, medical, technology, or research support resources and services that may include flexible physical space, access to capital, common services, and computer networking connections, that may be the Principal Use or Structure or accessory to the Principal Use or Structure, the uses of which are compliant with the C-l zoning district.

ZONING REGULATIONS § 17.15.01(B)(62).

increased traffic to the property, the ability to provide emergency services to the property, and the impact on property values.

¶5      Another topic of discussion was the fact that the property does not have its own access to a road. Instead, the property has an access easement. The owner of the property on which the easement resides attended the hearing and stated that the easement was meant as a driveway and was not intended for the volume of use that Richeson's plan would require. Following these comments, Richeson and his attorney were given an opportunity to respond before the plan commission began its discussion and deliberations.

¶6      During its deliberations, the plan commission had questions about the dual zoning on the property and the "consistency" requirement for rezoning related to the Town's comprehensive plan. Eventually, the plan commission requested that the Town's zoning administrator draft a report regarding how the consistency requirement would apply to the proposed rezoning request. The plan commission thereafter adjourned the meeting.

¶7      The zoning administrator's staff report concluded that *either* approval or denial would be consistent with the Town's comprehensive plan.[3] Specifically, the report concluded that the proposed rezoning would be inconsistent with the Primary Future Residential Development land use classification applicable to the property, but it would be "potentially consistent" with the Highway Commercial Overlay (HCO) land use classification that was

---

[3] *See* TOWN OF HORTONIA COMPREHENSIVE PLAN 2036 (2015 Update), https://www.townofhortonia.org/_files/ugd/de5d9e_b84ee3f6a83e4706b5a3f28093c94413.pdf

4

also applicable to the property. As a result, the report recommended either approval or denial of the rezoning request.

¶8 The plan commission met again on May 5, 2022. During that meeting, the zoning administrator summarized his report, and the plan commission made some comments on the record. Plan commission member Craig Cwiklowski provided the majority of the discussion, and the other members noted their agreement with his thoughts. Overall, the plan commission determined that rezoning was not consistent with the comprehensive plan and voted unanimously to recommend denying Richeson's rezoning and CUP applications.

¶9 Thereafter, the Town of Hortonia Board (the Board) met on May 17, 2022, to review the plan commission's recommendation and take a final vote on Richeson's applications. The minutes of that meeting noted that "[a]ll three Town Board members attended both of those [plan commission] meetings, heard the comments, saw the exhibits, and listened to the [p]lan [c]ommission's decision." The Board unanimously voted to deny the rezoning of Richeson's property, and as a result of that denial, it unanimously voted to deny the CUP as well.[4]

¶10 Richeson commenced a certiorari action in the circuit court, seeking review of the Town's decisions.[5] The Town counterclaimed against JRSCE only, alleging that it was operating its landscaping business in violation of the Town's

---

[4] Richeson appealed the Board's decisions to the Town's Zoning Board of Appeals (BOA). The BOA determined that it did not have jurisdiction to decide the appeal. The BOA's decision was not further appealed and is not part of this appeal.

[5] Going forward, we will refer collectively to the plan commission and the Board as "the Town."

Zoning Regulations "because landscaping businesses are not an allowable use in the R-1 District."

¶11     The parties filed cross-motions for summary judgment.  The circuit court held a nonevidentiary hearing on the motions and issued an oral ruling, which was later memorialized by written order.  As relevant to this appeal, the court granted the Town's motion for summary judgment on the certiorari claim and affirmed the Town's decisions to deny Richeson's rezoning and CUP applications.[6]  Richeson appeals.[7]

## DISCUSSION

¶12     On certiorari review, we test the validity of a decision rendered by a municipality.  *See Ottman v. Town of Primrose*, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411.  We therefore review the Town's decision, not that of the circuit court.  *See Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162.  We presume that the Town's decision is valid and correct, *see Ottman*, 332 Wis. 2d 3, ¶48, but the Town "must apply the appropriate legal standards and adequately express the reasons for its decision on

---

[6] The circuit court denied summary judgment on the Town's counterclaim.  That claim is still pending before the circuit court.

[7] This court has an independent duty to determine whether we have jurisdiction over an appeal.  *See Carla B. v. Timothy N.*, 228 Wis. 2d 695, 698, 598 N.W.2d 924 (Ct. App. 1999).  An appeal as of right can only be taken from a final judgment or order that "disposes of the entire matter in litigation as to one or more of the parties."  WIS. STAT. § 808.03(1) (2023-24).  After Richeson filed his notice of appeal, we questioned our jurisdiction in this case because the Town's counterclaim was still pending, and we ordered the parties to submit jurisdiction memoranda.  The parties filed a joint memorandum, asserting that because the Town did not file a counterclaim against Richeson, the circuit court's order was final as to him.  Based on the parties' memorandum, we determined that we have jurisdiction over Richeson's appeal.  We also determined that the criteria for an interlocutory appeal had been satisfied as to JRSCE's appeal, and we allowed JRSCE's appeal to continue as a permissive appeal.  *See* § 808.03(2) (2023-24).

the record," *see* ***Driehaus v. Walworth County***, 2009 WI App 63, ¶13, 317 Wis. 2d 734, 767 N.W.2d 343. It is Richeson's burden to overcome that presumption. *See* ***Ottman***, 332 Wis. 2d 3, ¶50. The Town's findings "may not be disturbed if any reasonable view of the evidence sustains them." *See* ***Snyder v. Waukesha Ctny. Zoning Bd. of Adjustment***, 74 Wis. 2d 468, 476, 247 N.W.2d 98 (1976).

¶13 Our review is de novo. ***Propp v. Sauk Cnty. Bd. of Adjustment***, 2010 WI App 25, ¶9, 323 Wis. 2d 495, 779 N.W.2d 705. However, that review is limited to whether the Town: (1) "kept within its jurisdiction"; (2) "proceeded on a correct theory of law"; (3) acted in an "arbitrary, oppressive, or unreasonable" manner that "represented its will and not its judgment"; and (4) could reasonably have reached its decision based on the evidence before it. *See* ***Ottman***, 332 Wis. 2d 3, ¶35.

¶14 On appeal, Richeson argues that the Town's decisions to deny his rezoning and CUP applications did not follow correct theories of law, were arbitrary and unreasonable, and "could not reasonably have been reached based on the lack of evidence before the [Town]." For the reasons that follow, we reject all of Richeson's arguments and affirm the Town's decisions.

## I. Correct theory of law

¶15 Richeson argues that the Town's decisions "should be reversed because the Town inexplicably proceeded on several incorrect theories of law." First, he contends that the Town erred because the Zoning Regulations do not allow for multiple zoning classifications. Richeson alleges that the property's "randomly drawn," "arbitrary" dual zone dividing line "does not comply with the Zoning [Regulations] as a matter of law," and he argues that the Town "proceeded

[on] an incorrect theory of law … [by] denying [Richeson's] request to [r]ezone the [p]roperty to the single zoning district of C-1 Commercial."

¶16    According to Richeson, § 17.3.03(A) of the Zoning Regulations expressly provides that "the boundaries of a Zoning District must follow the lot or property lines of a parcel." He asserts that this interpretation is supported by the statement in the zoning administrator's staff report that "a parcel should host no more than one base zoning district and one or more overlays." *See also* ZONING REGULATIONS § 17.15.10(B)(9) (defining "Base Zone" as "[t]he zoning district underlying a zoning overlay"). Further, he points to § 17.2.03(A) of the Zoning Regulations, which provides,

> All Lots shall abut a public street, except a lot of record with the Outagamie County Register of Deeds on October 28, 2020. Such lot may be occupied by any Permitted or Conditional Use of the Zoning District within which the lot is located, provided that such proposed use complies with all other applicable provisions of this Chapter.

Richeson argues that § 17.2.03(A) "is directly relevant … because it plainly demonstrates [that] the Zoning [Regulations], as written, require[] lots within the Town to not be dual zoned."

¶17    The interpretation of an ordinance is a question of law we review de novo, *Schwegel v. Milwaukee County*, 2015 WI 12, ¶18, 360 Wis. 2d 654, 859 N.W.2d 78, and we apply the same principles we use for statutory interpretation, *Stoker v. Milwaukee County*, 2014 WI 130, ¶17, 359 Wis. 2d 347, 857 N.W.2d 102. "[S]tatutory interpretation 'begins with the language of the statute.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning," and we interpret the language "in the context in

which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶¶45-46.

¶18 Based on the plain language of the Zoning Regulations, we conclude that dual zoning is not explicitly prohibited; thus, the Town did not proceed on an incorrect theory of law by refusing to grant Richeson's rezoning request. Section 17.3 of the Zoning Regulations is titled "Zoning District," and § 17.3.02, titled "Establishment of Zoning Map," states, in pertinent part, that "[t]he location and boundaries of the districts established *shall be as shown on the map* entitled 'Town of Hortonia Zoning Map.'… Amendments to the Zoning Map shall be approved by the Town Board … and shall promptly be portrayed on the Zoning Map." ZONING REGULATIONS § 17.3.02 (emphasis added). In other words, the zoning map establishes the boundaries of the districts, while the Zoning Regulations establish the rules for setting the boundaries.

¶19 As the Town identifies, Richeson's argument fails to address the first part of § 17.3.03(A) of the Zoning Regulations, which states that "[t]he boundaries of these Districts are hereby established as shown on the Zoning Map" and further provides that "the boundaries shown on such map shall be construed to follow … lot or property lines" "[*u*]nless otherwise noted on such zoning map." (Emphasis added.) Therefore, Richeson's assertion that the zoning map does not control because it was "*adopted* pursuant to the" Zoning Regulations is not persuasive. Here, the zoning map undisputedly creates a split zoning district on Richeson's property and demonstrates an unambiguous intent to designate only the front portion of the lot as commercial. Richeson has not identified any language in the Zoning Regulations that *explicitly* states that dual zoning is prohibited. The Town's zoning administrator's belief that dual zoning is "problematic" does not

mean that it violates the regulations.[8]  Further, even if only one zoning designation could apply under the regulations, there is no requirement that the property be zoned entirely commercial, as Richeson requests, rather than residential.  Thus, the Town did not proceed on an incorrect theory of law based on the terms of the Zoning Regulations.

¶20     Second, Richeson argues that the Town proceeded on an "incorrect theory of law by denying the [r]ezone because it assumed there would be insufficient access to support a C-1 Commercial property [based on the easement,] despite the fact that the [p]roperty is already, in part, zoned a C-1 Commercial."  According to Richeson, during the public hearing, "multiple comments were made suggesting that the [e]asement could not be used for [c]ommercial uses," and the Town "recklessly relied" on these "unsupported statements without ever reviewing the actual [e]asement."  Richeson states that the easement provides that it is an "easement for ingress and egress purposes" and that there are no limitations on the easement related to "the purposes of the 'ingress and egress' or volume."

¶21     We conclude that the Town did not proceed on an incorrect theory of law based on its discussion of the easement.  Initially, we note that we agree with

---

[8] In Richeson's appellate briefs, he mentions that the zoning administrator "repeatedly advised that dual zoning is problematic and contrary to good zoning practices."  We note that while the zoning administrator did state multiple times that his "professional opinion" is "that dual zoning is problematic," he also made the following important observations:

> So with respect to the dual zoning as eluded to and you heard me say, from a planning standpoint and from the [z]oning [a]dministration's standpoint, I think it's problematic.  That's not to say it's unlawful.  You can have dual zoning.  There's nothing in the State statutes, there's nothing in the Town code that prohibits it.  I think it's a mistake.  I convey that to you as a [p]lanning [c]ommission.  But that doesn't mean that you can't allow it.

the Town that the impact of the existing easement was an issue of fact for the Town to consider within its rezoning and CUP decisions; it was not a theory of law that controlled its decision. While an easement grants specific legal rights, we agree with the Town that its decisions on Richeson's applications were not based on the existence or nonexistence of those *rights*. The Town merely considered that the property had an easement rather than direct access.

¶22 Regardless, even if we assume, without deciding, that an interpretation of the permissible use of the easement somehow created an issue of law, we conclude that the Town properly considered only *the existence of* the easement in its decision. First, we disagree with Richeson's assertions that "the Town clearly believed the [e]asement was not legally sufficient" and that this determination served as the basis for its decision. Richeson provides one example from the record, citing the following statement from one plan commission member:

> And above and beyond is that easement to the property, the access to the property. It's going to put a lot of burden on that easement. From what I understand was originally for residential use, and now we have, was it up to 41 units possible going in and out of there every day? I would think that that easement would be fully abused.

Richeson fails to acknowledge, however, that immediately after the plan commission member made the above statement, another member clarified the proper consideration of the easement, stating, "I know that the easement in

11

question is sort of a separate question, but it can factor into your thinking. I see it's kind of problematic. But that's a whole nother ball game, I guess."[9]

¶23 We agree with the Town that, at most, "it was the existence of a dispute about the [e]asement, not the Town's legal interpretation of the [e]asement, that the [Town] concerned itself with." As the zoning administrator stated at the first meeting, "Whether or not sufficient access is provided for the proposed use is fully within the purview of the [p]lan commission and the Town Board." At that meeting, a neighboring property owner, and the grantor of the easement, testified that the easement was "supposed to have been a driveway," and he further stated, "I'm totally against it. I'm not going to have a road made out of my driveway." The fact that this public comment was made does not mean that the Town interpreted the easement, determined its intent, or decided what the

---

[9] Richeson also asserts that Town Chairperson Dennis Clegg repeatedly confirmed in his deposition "that the [e]asement was a *primary factor* in the Town's denial of the [r]ezone, even though [Clegg] conceded that he never reviewed the [e]asement and had no personal knowledge of it."

As an initial matter, throughout his briefing, Richeson repeatedly points to Clegg's deposition. The Town, in its response, questions whether "Clegg's deposition testimony is even permissible evidence on certiorari review" because common law certiorari review "is limited to the record compiled by the municipality." *See North Cent. Conservancy Tr., Inc. v. Town of Harrison*, 2023 WI App 64, ¶11, 410 Wis. 2d 284, 1 N.W.3d 707. According to the Town, "Clegg's deposition came over a year later and was not evidence before the Board. [Richeson] never moved to supplement the [c]ircuit [c]ourt record with Mr. Clegg's deposition and, therefore, it is not part of the municipality's record, which is what the Court of Appeals is to review in a certiorari action." Richeson does not appear to respond to this argument in his reply brief. "Unrefuted arguments are deemed admitted." *See State v. Chu*, 2002 WI App 98, ¶41, 253 Wis. 2d 666, 643 N.W.2d 878.

Regardless, if we were to consider Clegg's deposition, it would not change our conclusion that the Town did not proceed on an incorrect theory of law by considering the existence of the easement. Further, we agree with the circuit court's statement that "the intent and statements of a single board member whose vote carries no greater weight than that of any other board member does not defeat the presumption of the validity of the actions of the [Town]."

easement allows or does not allow. In fact, the Town's attorney provided the plan commission with the following warning:

> It's not your job to be judges to decide what an easement allows or doesn't allow. You know, that's beyond all of our pay grades here. So don't be tempted to say the easement allows this or doesn't allow this. But if you think that the questions about an easement are relevant to your discussion, you might think that.

We therefore disagree that the Town proceeded on an incorrect theory of law by merely discussing the easement.

¶24 Third, Richeson argues that the Town proceeded on an incorrect theory of law because it misapplied and misapprehended the HCO. There is no dispute that the property is located within the HCO. *See* ZONING REGULATIONS § 17.3.13(B). According to Richeson, "[t]he Town claimed the [r]ezone to be incompatible with adjoining properties (even though the Town did not 'expressly' state it), even though *numerous* properties in the vicinity are already zoned C-1, including *the other half of the* [p]*roperty*." Richeson, therefore, "contend[s] that the Town failed to apply the appropriate standards under the HCO" because "its determination that the [r]ezone is somehow 'incompatible' [with the adjoining properties and the comprehensive plan] was not correct as a theory of law."

¶25 We conclude that the Town did not misconstrue the applicability of the HCO. The Zoning Regulations provide that permitted uses in the HCO are "[a]ny use listed as a Permitted Use in the C-1 District … other than uses deemed by the [p]lan [c]ommission to be incompatible with a use present on an abutting lot." ZONING REGULATIONS § 17.3.13(C)(1). The Zoning Regulations further provide that "[t]he determination of incompatibility shall be based on one or more of the following:" (a) "[t]he foreseeable external impacts of the proposed use on adjoining parcels"; (b) "[t]he protection of interests and preservation of property

13

values of established businesses"; and (c) "[t]he safety of the general public." ZONING REGULATIONS § 17.3.13(C)(1)(a)-(c).

¶26 Here, based on the members' comments, the plan commission expressed that its "top goal" was "to take care of [the Town's] residents," and it found that Richeson's plan was incompatible with the residential uses of the surrounding lots. Further, the public comments, which the commission relied upon, addressed issues with regard to each of the factors in ZONING REGULATIONS § 17.3.13(C)(1)(a)-(c). Richeson presents no legal authority for the proposition that because the property was in the HCO, it was *required* to be zoned entirely C-1 Commercial. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."). Therefore, the Town did not misconstrue the applicability of the HCO.

¶27 Fourth, Richeson argues that the Town proceeded on an incorrect theory of law because it wrongfully focused on the CUP as grounds for denying the rezone. According to Richeson, "[t]he rezoning of property and request for a [CUP] are completely independent requests," with different standards under the zoning ordinance, "and the Town should have taken them as such."

¶28 We conclude that the Town is allowed to consider the anticipated use of a property when evaluating a rezoning application. While Richeson discusses, in detail, the different analyses required for a CUP and a rezoning request, he fails to cite any legal authority for the proposition that the Town is specifically prohibited from considering the future use of the property when making a rezoning decision. *See **Pettit***, 171 Wis. 2d at 646. He asserts that nothing in the Zoning Regulations "provides for the consideration of a

CUP … when determining what base zoning classification is appropriate." However, the inverse is also true; nothing prohibits it.

¶29     The Zoning Regulations simply provide that "[w]henever the public necessity, convenience, general welfare, or good zoning practice require, the Town Board may, by ordinance, change the District boundaries or amend, change, or supplement the regulations established by this Chapter or amendments thereto." ZONING REGULATIONS § 17.11.01.  Further, our case law tells us that whether to rezone a property is a "fact-intensive, individualized determination."  *Miller v. Zoning Bd. of Appeals*, 2022 WI App 51, ¶26, 404 Wis. 2d 539, 980 N.W.2d 295. And it further provides that "[t]he factors to be weighed in considering the validity and reasonableness of rezoning are several," including "whether the rezoning is consistent with long-range planning and based upon considerations which affect the whole community"; "[t]he nature and character of the parcel"; "the use of the surrounding land and the overall scheme or zoning plan"; "the interests of public health, morals and safety"; and "the promotion of public welfare, convenience and general prosperity."  *Step Now Citizens Grp. v. Town of Utica Plan. & Zoning Comm.*, 2003 WI App 109, ¶30, 264 Wis. 2d 662, 663 N.W.2d 833 (citations omitted).[10]

---

[10] Richeson challenges the Town's citation to *Step Now Citizens Group v. Town of Utica Planning & Zoning Committee*, 2003 WI App 109, 264 Wis. 2d 662, 663 N.W.2d 833.  He argues that *Step Now* "is distinguishable and not dispositive" because "it does not address a situation, like here, where the municipality decided a base zoning classification on the basis of a potential, future *Conditional Use* (the applicable standards of which differ)," "it dealt with *only a rezone and a Permitted Use*."  Richeson distinguishes *Step Now* on its facts, but there is no indication in the decision that the factors to be weighed in considering the validity and reasonableness of a rezoning decision are applicable only under the specific facts of that case rather than being a general proposition of law.  Regardless, we believe the factors outlined in *Step Now* are applicable here.

¶30     We agree with the Town that these factors cannot be considered in a vacuum.  As the Town explains,

> The public interest for or against a rezone cannot be determined if the analysis is simply "should this parcel have a commercial designation" without knowing what will be done with that designation.  The rezoning determination depends on the specific land use proposal, which should be analyzed in depth.  Indeed, it is impossible for a municipality to decide whether a rezoning is appropriate without knowing the proposed land use and determining whether that use is even allowed in the proposed new zoning category.  Nor is [Richeson's] approach consistent with the required public hearing and input processes for rezones.  Interested parties do not attend rezoning hearings to provide input on abstract zoning map concepts, divorced from the specific project.  They are interested in what is actually going to happen at their neighboring properties.

Given the above, it is not unreasonable for a municipality to act on a rezoning application by at least minimally considering the proposed land use.  *Cf. id.*, ¶48 ("Step Now cites no authority for the proposition that in making a legislative decision, a municipality that gathers all possible information and better educates itself and its citizens about the ramifications of a zoning decision is [erroneously exercising] its discretion or acting in excess of its power.").

## II.  Arbitrary and unreasonable

¶31     Next, Richeson asserts that the Town's decisions on his rezoning and CUP applications were arbitrary and unreasonable.  According to Richeson, the record is "devoid of any 'rational basis' from *actual evidence*," and, instead, the Town's decisions were "based on the Board's will, judgment and personal feelings" and "on the 'recommendation and rationale of the [p]lanning [c]ommission.'"  "Adopting the [p]lan [c]ommission's findings blindly without any actual support or evidence," he argues, "demonstrates the arbitrary nature of the Board's decision."  Further, he complains that the "actual reasoning for the

[p]lan [c]ommission's recommendation was based on town patrons and biased neighbors' opinions," which were based on "emotion and speculation." Finally, Richeson renews his complaint that the Town "*highly* considered" the easement when it reached its decision.[11]

¶32 We conclude that the Town's decisions were not arbitrary or unreasonable. A determination that has a rational basis is not arbitrary. *Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978). In this case, the Town heard several public comments expressing disfavor with Richeson's proposal. As our supreme court has stated, "[z]oning is a matter of local concern," and "public expressions of support or opposition establish a valid basis—that is, substantial evidence—for a decision." *AllEnergy Corp. v. Trempealeau Cnty. Env't & Land Use Comm.*, 2017 WI 52, ¶87 & n.33, 375 Wis. 2d 329, 895 N.W.2d 368. These concerns were legitimate to the people expressing them, were not based upon speculation, and property owners are competent to testify regarding impacts on their property. *See Eco-Site, LLC v. Town of Cedarburg*, 2019 WI App 42, ¶17 & n.7, 388 Wis. 2d 375, 933 N.W.2d 179. It was

---

[11] Richeson also challenges the Town's decisions as arbitrary because he states that the Town "did not even follow its own ordinances in making the decision to deny the applications." The Zoning Regulations state that "[e]very final decision under this section shall be in writing accompanied by findings of fact based on the record." ZONING REGULATIONS § 17.12.03(B). According to Richeson, "[t]here is no actual written decision from the Board with findings of fact, only the Board's meeting minutes summarizing its decision and discussion," which he contends "do not constitute an actual 'final decision.'"

As the Town identifies, however, written findings are not required for certiorari review. *See Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶48, 362 Wis. 2d 290, 865 N.W.2d 162 ("[M]unicipal administrative decisions need not be in writing."). Richeson does not assert that the Town's reasoning was unclear based on the record, *see id.*, and he cites no legal authority for the proposition that the Town's failure to follow its own regulations by not issuing a written decision rendered its decision arbitrary, *see State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). We therefore reject this argument.

appropriate for the Town to rely upon compelling input from the public, especially from those who reside in the immediate vicinity of the property, to reach its decision.

¶33 Richeson appears to suggest that the Town needed "factual evidence … such as reports or studies" to support its decisions. However, the Town correctly notes that this court has already rejected that position. In *Eco-Site, LLC*, the Town of Cedarburg denied approval of a new cellular tower. *Id.*, ¶6. The town's denial was based in part on its conclusion, drawn from citizen testimony at the hearings, "that the tower was incompatible with many of the neighboring homeowners' residential lifestyle, and for some, the values of their homes would be diminished by the ominous, shadow-casting tower." *Id.*, ¶27. In affirming the town's decision, we acknowledged that "no one produced a large-scale, detailed analysis of the financial effect of the tower," but we concluded "that is not needed given our standard of review." *Id.* Here, too, we conclude that no studies were required to provide support for the Town's decisions.

¶34 Further, after the first hearing, the plan commission determined that it required more information, and it requested an additional report on the rezoning.[12] The report explained that the rezoning must be "consistent with" the Town's comprehensive plan, and the report concluded that the proposed rezoning would be inconsistent with the Primary Future Residential Development land use classification, which was applicable to the property.

---

[12] Based on the record, it appears that multiple staff reports were created by the zoning administrator addressing Richeson's applications.

¶35 Based on that report and the public comments, the Town concluded that the rezoning request and the CUP would be inconsistent with the Town's comprehensive plan. The transcripts of the plan commission meetings flesh out those findings based on the evidence in the record and state the Town's reasoning for the denials. On this record, we conclude that the Town's decisions had a rational basis and represented its judgment and not its will.

## III. Substantial evidence

¶36 Lastly, Richeson argues that the Town's denial of the rezoning and the CUP applications was not based on substantial evidence. "'Substantial evidence' is evidence of such convincing power that reasonable persons could reach the same decision as the [Town]." *See **Oneida***, 362 Wis. 2d 290, ¶43 (citation omitted). However, we are not asked to weigh the evidence, and we may not substitute our view of the evidence for that of the Town. *See **Van Ermen***, 84 Wis. 2d at 64. "The substantial evidence test is a significant hurdle … to overcome because, in applying the test, this court is deferential to the [Town's] decision." *See **AllEnergy Corp.***, 375 Wis. 2d 329, ¶88. "[W]e consider only whether the [Town] made a reasonable decision based on the evidence before it." *See **id.***, ¶89.

¶37 Similar to his argument above, Richeson asserts that the record in this case is devoid of any substantial evidence, and the Town's decisions on his applications were based "on *uncorroborated hearsay and conjecture* from interested neighbors." Richeson argues that "no one validated whether property values would decrease or an increase in demand for public safety services [would occur] because of alleged trespassing or theft," and "no one provided any evidence

that somehow noise and traffic would significantly increase [at] 'all times of day and night.'"[13]

¶38 For many of the same reasons why we determined that the Town's decision was not arbitrary or unreasonable, we conclude that substantial evidence supported the Town's findings that the rezoning and CUP were not consistent with the Town's comprehensive plan. As noted above, the zoning administrator's report concluded that the proposed rezoning would be inconsistent with the Primary Future Residential Development land use classification applicable to the property and that denial of the rezoning would be consistent with the comprehensive plan. It is undisputed that the property is surrounded by areas zoned R-1 Residential and that individuals have had their residences located on those adjacent properties for a long time. As a result, the plan commission's observations that "the incubator plan is not in line with the vision to maintain a rural setting for the residential areas" and that it is "not consistent with the surrounding residential uses" find support with evidence in the record.

¶39 Further, several members of the public expressed "significant opposition" to the project during the public hearing. These comments raised numerous concerns about Richeson's proposed use, both alone and in relation to the surrounding land uses. As addressed above, each of these concerns provided evidence for the Town's consideration, *see* **AllEnergy Corp.**, 375 Wis. 2d 329,

---

[13] Richeson also complains that the Board simply recited the plan commission's findings to reach its decisions. However, as the Board's minutes make clear, the Board members attended the plan commission's proceedings and, therefore, witnessed the entirety of the evidence presented and the commission's deliberations. In reply, Richeson asserts that Clegg was not present at one of the meetings, but that fact, involving one Board member, does not change our decision here.

¶87,[14] and no professional studies were necessary, *see Eco-Site, LLC*, 388 Wis. 2d 375, ¶17 & n.7, ¶27. As the Town suggests, the public commenters were "permitted to draw upon their own knowledge and common sense in expressing their opinions that adding 47 new businesses to a single property [would] adversely impact the surrounding properties. Some things are self-evident." Given these public comments and the specific circumstances of the property, the surrounding area, and the proposed use of the property, it was not unreasonable for the Town to conclude that Richeson's rezoning and CUP applications were incompatible with the Town's comprehensive plan. *See Snyder*, 74 Wis. 2d at 476. Richeson merely disagrees with his neighbors and the Town, which is not a basis for us to overturn the Town's decisions.

¶40 In summary, the Town made its decisions after reviewing Richeson's rezoning and CUP applications, and after considering multiple staff reports, the Zoning Regulations, and the Town's comprehensive plan. The Town held three separate hearings of the plan commission and the Board, and it considered public comments during one of those hearings. The Town appropriately reviewed the evidence before reaching a final decision. There is no

---

[14] Richeson challenges the Town's citation to *AllEnergy Corp. v. Trempealeau County Environment & Land Use Committee*, 2017 WI 52, ¶1, 375 Wis. 2d 329, 895 N.W.2d 368, where Trempealeau County denied a CUP to AllEnergy for nonmetallic mineral mining. Richeson essentially argues that the case does not stand for the "contention that public comment alone is 'substantial evidence'" because "the public in *AllEnergy* *cited reports, studies, data and specific examples of actual occurrences*" with nonmetallic mineral mining. However, *AllEnergy* does not stand for the proposition that public comments constitute evidence only when they reference reports, studies, and first-hand experiences. The *AllEnergy* court noted that "the record is replete with specific and substantial representations of people describing … their opinions" and that "many of the people commenting at the hearing on AllEnergy's proposal … will be living, working, and recreating alongside the proposed mine." *Id.*, ¶¶86-87. Members of the public do not need special knowledge or information in order to voice opinions and concerns about their community.

basis to conclude that the Town proceeded on an incorrect theory of law, that it acted in an "arbitrary, oppressive, or unreasonable" manner, or that it could not have reasonably reached its decision based on the evidence before it. *See **Ottman**,* 332 Wis. 2d 3, ¶35.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5. (2023-24).